544 So.2d 616 (1989)
STATE of Louisiana
v.
Lee E. FLOYD.
No. CR88-703.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
George Higgins, Higgins & Starling, Pineville, for defendant-appellant.
Roger Breedlove, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and KNOLL, JJ.
STOKER, Judge.
Defendant was convicted by a jury of negligent homicide, a violation of LSA-R.S. 14:32, and sentenced to serve three years at hard labor, suspended, and placed on five years of probation with the special condition that one year be served in parish jail. Defendant appeals his conviction.

FACTS
At about 8:30 p.m. on May 31, 1988 Christopher Cole, aged 15, was operating a Honda three-wheeler near the town of Deville, without a license or a helmet. Cole was witnessed driving the vehicle on the shoulder of Highway 115 in a southerly direction. Shortly thereafter, residents in the area heard a loud crash. A motorcycle was viewed sliding in a northerly direction in the southbound lane. Area residents summoned police and proceeded to the accident scene to render assistance. Appellant, Lee Floyd, was pinned beneath the motorcycle which had come to a stop in the southbound lane. Stacey Myer who had been a passenger on the motorcycle, was lying across the center line of the highway and screaming hysterically. According to one witness at the scene, Myer stated that the appellant had stated just prior to the accident that he was going to "scare the *617 hell out of the little bastard." Cole and the three-wheeler were later discovered in the ditch next to the southbound lane. Cole subsequently died as a result of injuries suffered in the accident.
Relying on debris discovered in the roadway, tire markings, gouges in the blacktop pavement and the positioning of the vehicles and their riders, a state trooper investigating the incident concluded appellant's motorcycle crossed the center line by about 18 inches and struck the victim's vehicle in the victim's lane of traffic. The force of the impact knocked the three-wheeler backward as the victim flew forward. Appellant's motorcycle slid from the point of impact in the southbound lane for 87 feet in a northerly direction.
Defense counsel sought to establish the victim's death was the result of a tragic accident as opposed to criminal negligence. Although a State witness testified to the comment made by Stacey Myer at the accident scene, in her own testimony Myer denied having made the statement. Instead, Myer testified that an object "flashed" before the motorcycle as appellant was driving northbound on the highway. According to Myer, the object was in the northbound lane and appellant veered left into the southbound lane in an effort to avoid an accident. Myer considered the accident unavoidable and stated she learned after the accident and the arrival of nearby residents that the object struck was a youngster operating a three-wheeler. Two other persons at the scene testified to statements made by Myer when they arrived to give assistance. According to these witnesses, Myer stated the victim was in the improper lane of traffic and that appellant attempted to avoid the accident. Another witness testified that Cole had to cross the highway to get to his house because it was not located on the same side of the road on which he had been traveling.

DISPOSITION OF ASSIGNMENTS OF ERROR
Defendant has assigned many errors. However, we find reversible error was committed through prosecutorial error in treating Stacey Myer as a hostile witness and in commenting on her credibility. Therefore, a discussion of defendant's other assignments of error is moot. We reverse and remand for a new trial.
The issues which we consider are raised in defendant-appellant's assignments of error numbered 7, 8 and 10.
Defendant contends the trial court erred in allowing a prosecution witness, Stacey Myer, to be treated as a hostile witness and asked leading questions although a proper foundation was not laid. Defendant also contends the trial court erred in restricting cross-examination of Stacey Myer by not permitting the use of leading questions. Defendant further argues that the trial court erred in not granting a mistrial or admonishing the jury after the prosecutor expressed his opinion that his witness, Stacey Myer, was lying.
These assignments relate to the testimony of Stacey Myer, who was called as a prosecution witness, in which she asserted that the accident occurred in defendant's lane of traffic, although defendant veered to the left to try to avoid hitting Chris Cole. The prosecution, represented by Mr. Breedlove, then commenced trying to impeach Myer's credibility with prior inconsistent statements and was permitted by the court to treat Myer as a hostile witness over the objection of defendant. The pertinent testimony for these assignments of error is set forth below:
"BY MR. BREEDLOVE:
Q Okay. You can't say where that shiny object was prior to the collision then can you?
A In our lane.
Q It was in your lane?
A NO RESPONSE RECORDED
Q Now, do you remember a conversation that you had with me back in October in my office?
A Yes sir.
Q Do you remember telling me in that conversation....
BY MR. HIGGINS: Your Honor, I ... I'm gonna ... this is his witness, your Honor.

*618 BY MR. BREEDLOVE: Your Honor, she's ... but if she becomes a hostile witness I've got the right....
BY MR. HIGGINS: You haven't shown me that. He hasn't....
BY THE COURT: Yea. Well, he has to demonstrate it though someway and he's asking her something now. I don't know. She may agree with what he says and therefore wouldn't be hostile. I don't know.
BY: MR. BREEDLOVE:
Q Do you recall in that conversation that you and I had in my office in October, that you looked into these eyes, and told me that you were in the wrong lane. That ya were in the wrong lane of traffic.
A No sir.
Q But that the little boy was just as wrong because he was on a three-wheeler.
A No sir.
Q You don't remember telling me that?
A No sir.
Q Is it your testimony you didn't tell me that?
A That's right.
Q Do you remember telling me no matter what that you were going to side with Gene?
BY MR. HIGGINS: Your Honor, this... this is ... let's bring ... if Mr. Breedlove has some great bit of evidence. Let him bring a statement or something that he has. This is all self... this is....
BY THE COURT: Well, he has ... he... now, he has to ... he has to demonstrate hostility and he's apparently, uh, making an effort to do it.
BY MR. HIGGINS: How has she demonstrated hostility by telling the truth?
BY THE COURT: I don't know. That's what we're....
BY MR. HIGGINS: If ... if he has to show, uh, hostile act....
BY MR. BREEDLOVE: Your Honor, if Mr. Higgins desires me to take the stand and recite the conversation that I had with her, I'd be more than happy to.
BY THE COURT: Alright. But you may proceed with the questioning.
BY MR. BREEDLOVE: Thank you, Your Honor.
BY THE COURT: Objection is su ... is overruled.
BY MR. BREEDLOVE:
Q Do you recall telling me that you would side with Gene no matter what?
A Because....
Q That Gene gave you money.
A No. I didn't say that.
Q No. That Gene gives you money. You didn't tell me that Gene gives you money?
A No, I didn't.
Q That he was going to help you with her hos ... with your hospital bill?
A No, I didn't.
Q You didn't tell me any of those things?
A No."

* * *
"BY: MR. HIGGINS:
Q Did you tell anyone at the accident scene that Gene Floyd had ... or something effect that ... that we shouldn't have done it. We shouldn't have done it. Gene told me he was going to scare the hell out of the little bastard. I ... I think that was the testimony.
A No.
Q Okay. Here is a more important question. Did Gene tell you that?
A No, he didn't.
Q Here's a better one than that. Did ya try and scare anybody?
A No."
* * * * * *
BY MR. BREEDLOVE: Your Honor, I... I think I've demonstrated that certainly the witness is a hostile witness as far as the State's case is concerned.
BY MR. HIGGINS: Your Honor, a hostile witness is somebody that surprises *619 you. A hostile witness isn't somebody that....
BY MR. BREEDLOVE: Your Honor, I am surprised. I expected the woman to tell the truth. I am tremendously surprised."
We find the testimonial assertions of the prosecuting attorney, Mr. Breedlove, belie his claim of surprise. Mr. Breedlove's statement that Stacey Myer told him prior to trial that she would "side with Gene [defendant], no matter what" indicates that he knew she would not testify against defendant and was not, in fact, surprised by her testimony at trial.
A party may not impeach its own witness unless taken by surprise or unless the witness shows hostility. LSA-R.S. 15:487 and 15:488. This impeachment may be made only by a prior inconsistent statement, admissible only on the issue of credibility and not as substantive evidence of defendant's guilt. State v. Williams, 445 So.2d 1171 (La.1984). However, if a litigant has reason to believe a witness will not confirm statements previously made by him, he has no right to call him to the stand in order (on pretext of refreshing his memory upon his failure to confirm them) to get such statements before the jury. See State v. Kaufman, 304 So.2d 300 at note 6 (La.1974), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 591 (1976), and cases cited therein; Pugh, Louisiana Evidence Law 135, 137 (1974).
As noted above, Mr. Breedlove stated that Stacey Myer told him she would stand by defendant, giving him reason to believe Myer would not confirm statements she allegedly made to him prior to trial. On the pretext of refreshing Myer's memory, the prosecutor presented Myer's alleged prior inconsistent statements and other alleged statements before the jury. In our opinion, the "showing" of prior inconsistent statements was made for their substantive effect, rather than only for impeachment purposes. Such statements cannot be given substantive effect because they were made outside of court, were not made under oath and were not subject to cross-examination. The other alleged statements, as to siding with defendant and as to defendant giving Myer money, are not even prior inconsistent statements. They are pure hearsay, offered only for their substantive truth in order to discredit Myer's testimony.
Moreover, defendant was denied his right to confront and cross-examine the "witness" testifying to the prior inconsistent statements because they were offered by the prosecuting attorney himself while not on the stand as a witness under oath, but rather under the pretext of laying a foundation and attempting to refresh Myer's memory. The prosecuting attorney clearly contravened Rule 3.4(e) of the LSBA Rules of Professional Conduct when he asserted his personal knowledge of facts in issue when he was not testifying as a witness. See State v. Prestridge, 399 So.2d 564 (La.1981). Since his "testimony" was not given under oath, his evidence was not properly allowed. It should have been excluded. Also, because the prosecutor did not properly introduce the prior inconsistent statements into evidence, defendant was denied his right to make known to the trial judge his desire for a cautionary instruction to the jury as to the admissibility of prior statements for the limited purpose of impeaching the witness's credibility and not as substantive evidence of defendant's guilt. State v. Ray, 259 La. 105, 249 So.2d 540 (1971).
We must also note that the prosecuting attorney made a statement before the jury as to his belief in Myer's credibility when he said, "I expected the woman to tell the truth." Mr. Breedlove improperly referred to "facts" which were not in evidence, but were exclusively within his personal knowledge, and then expressed his opinion as to Myer's credibility. See State v. May, 339 So.2d 764 (La.1976). An attorney is prohibited from expressing an opinion as to a witness's credibility by Rule 3.4(e) of the LSBA Rules of Professional Conduct. The standards in the Rules of Professional Conduct have the force and effect of substantive law. Succession of Cloud, 530 So.2d 1146 (La.1988); State v. *620 Romero, 533 So.2d 1264 (La.App. 3d Cir. 1988), writs granted, 541 So.2d 879, 880 (La.1989). This created a situation in which the prosecutor's credibility was pitted against Myer's in front of the jury as a representative of the State. Under the circumstances, the weight of the prosecutor's office may have induced the jury to give his statements inordinate weight, thus unfairly influencing their verdict. State v. Prestridge, supra; State v. Miller, 391 So. 2d 1159 (La.1980); State v. Kaufman, supra. The trial court's refusal to admonish the jury as to the prosecutor's comment tended to lend even greater weight to the prosecutor's opinion.
The issue of Myer's credibility was extremely significant in the State's case since she was the sole eyewitness to the accident aside from defendant and Chris Cole. Therefore, the prosecutorial errors committed in attacking her credibility cannot be considered harmless beyond a reasonable doubt. State v. Kaufman, supra; State v. Brunet, 521 So.2d 594 (La.App. 1st Cir. 1988); see also State v. Brown, 319 So.2d 409 (La.1975). Myer's evidence, accepted as true and credible, was sufficient to cast reasonable doubt on the State's evidence against defendant. See State v. Romero, supra. Therefore, the improper impeachment of Myer and the prosecutor's comment upon her credibility constitute reversible error.

DECREE
For the reasons given, defendant's conviction is reversed and the sentence is vacated. The case is remanded for a new trial in accordance with law.
REVERSED, VACATED AND REMANDED.