619 So.2d 861 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
James McSWEENEY, Defendant-Appellant.
No. CR92-1429.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*863 David Wayne Burton, De Ridder, for State of La.
Charles A. "Sam" Jones, III, De Ridder, for James McSweeney.
Before DOUCET, KNOLL and COOKS, JJ.
KNOLL, Judge.
On August 22, 1991, a Grand Jury of Beauregard Parish indicted defendant, James McSweeney, with one count of distribution of marijuana, a violation of LSA-R.S. 40:966 A(1), and one count of distribution of cocaine, a violation of LSA-R.S. 40:967 A(1). The trial jury found defendant guilty on both counts. The sentencing court sentenced defendant to imprisonment at hard labor for 108 months on each count, the sentences to run concurrently.
On appeal, defendant filed 14 assignments of error attacking his conviction. However, we will only consider the 9 assignments of error which defendant briefed and treat the remaining assignments of error not briefed as abandoned, in accordance with Uniform Rules of Louisiana, Courts of Appeal, Rule 2-12.4. See, State v. Gintz, 438 So.2d 1230 (La.App. 3rd Cir. 1983).

FACTS
The record shows that defendant distributed controlled dangerous substances to undercover narcotics agents on two separate occasions in Merryville, Louisiana. The first transaction occurred on February 18, 1991. Officer Betty Pinchon, an undercover agent with the Beauregard DeRidder Narcotics Task Force, and Officer Mike Carrier, a patrolman for the DeQuincy Police Department, met with Deputy Saul Wilson of the Beauregard Parish Sheriff's Office on February 18, 1991. Deputy Wilson gave Officers Pinchon and Carrier $200 each in unmarked bills to buy contraband from defendant. The officers went to a laundromat in Merryville, where a confidential informant introduced defendant to the undercover officers. Defendant asked how much marijuana they wanted. After they replied that they wanted an ounce of marijuana, defendant quoted them a price of $120 each.
*864 The undercover officers testified that defendant took out a bag containing approximately 5 hand rolled marijuana cigarettes and handed Officer Pinchon one to smoke while waiting for him to go to Vidor, Texas, to obtain more marijuana. In the meantime, Officer John Jackson, a DeRidder narcotics investigator, replaced Officer Carrier who had to leave. Thereafter, defendant returned and explained that he was unable to obtain the marijuana because his friend had an emergency. He returned the $240 he had received from Officers Pinchon and Carrier, gave Officer Pinchon another marijuana cigarette "for her trouble", and instructed her to meet him elsewhere later that day.
Officer Pinchon testified that she was certain that the man who negotiated with her and gave her the two marijuana cigarettes on February 18, 1991, was the defendant. Officers Carrier and Jackson corroborated her testimony.
The second transaction occurred on February 28, 1991. At this time, Officer Pinchon met with Deputy Wilson and Lieutenant Terry Skinner of the DeQuincy Police Department at the Beauregard Parish Sheriff's Office. She and Officer Skinner each received $200 in unmarked bills to purchase contraband from defendant in Merryville. The officers arrived in the parking lot of the Merryville housing project at 10:50 p.m. Defendant and another man, Roger Beason, were standing in front of an apartment and approached their car as the officers drove up. Defendant handed Pinchon two clear plastic bags and explained that one contained $100 worth of cocaine and the other contained $200 worth of cocaine. He said that he had "pinched out of the $100 one," so he went to an apartment to replace the cocaine he had taken out of the bag. When defendant returned 20 minutes later, he gave Officer Pinchon the bag in return for $100. Defendant assured Lieutenant Skinner that the cocaine was uncut.
Defendant claimed that he was living with his sister and her family in Fanette, Texas, in February of 1991, and was not in Merryville on the dates of the crimes. He also argued that he is often mistaken for another man. To rebut defendant's claims of misidentification and alibi, the trial court allowed the state to play a video tape taken by Deputy Wilson of the February 18th meeting. The court did not allow the audio portion of the video tape to be played.
Additionally, the trial court allowed the state to play a tape recording of the February 28th alleged cocaine buy. Deputy Wilson had monitored and taped the transaction through the use of a body microphone on Officer Pinchon. Officer Pinchon identified defendant's voice on the tape.

RELEASE WITHOUT BAIL AND/OR DISCHARGE OF PRETRIAL BOND OBLIGATION
As his first assignment of error, defendant contends that the trial court erred in denying his motion for release without bail and/or discharge from bond obligation.
After a warrant for defendant's arrest was issued on August 22, 1991, defendant turned himself in on August 27, 1991. On September 6, 1991, defendant was arraigned and formally charged with 2 counts of distribution of a controlled dangerous substance. He pleaded not guilty to both counts. At that time, trial was scheduled for January 20, 1992. On October 9, 1991, the trial court granted the state's motion to refix trial to January 27, 1992.
On January 14, 1992, defendant filed a motion for release without bail and/or discharge from bond obligation. After a hearing on January 24, 1992, the trial court took the matter under advisement. The matter did not go to trial on January 27, and the trial court denied defendant's motion on January 30, 1992. Defendant was not tried until March 16, 1992, because of the criminal docket backlog.
Our jurisprudence recognizes two separate and distinct bases for a defendant's right to a speedy trial: a statutory right granted by LSA-C.Cr.P. Art. 701 and a constitutional right embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana Constitution of 1974. State v. Cowger, *865 581 So.2d 283 (La.App. 5th Cir.1991); State v. Johnston, 480 So.2d 823 (La.App. 2nd Cir.1985).
In brief, defendant relies upon LSA-C.Cr.P. Art. 701(D), which provides that the trial of a defendant charged with a felony shall commence within 120 days if he is continued in custody. However, this article merely authorized the pre-trial release of defendant, and upon a defendant's conviction, the issue is moot. State v. Cowger, supra; State v. Johnston, supra. Accordingly, we find defendant's assignment under LSA-C.Cr.P. Art. 701(D) moot.
We have also examined the record to see if defendant's constitutional right to a speedy trial prejudiced his case. The constitutional right to a speedy trial attaches when an individual becomes an accused, either by indictment or bill of information, or by arrest and actual restraint. The initial inquiry is into the length of the delay. If the delay is presumptively prejudicial, there will be an inquiry into other factors, such as the reasons for the delay, defendant's assertion of his rights, and the actual prejudice to defendant.
In this case, the length of the delay between his indictment on August 22, 1991, and his trial on March 16, 1992, is approximately 7 months. Assuming the delay is prejudicial, we must analyze the other factors.
First, the length of delay was caused by a backlog of criminal cases, not by bad faith or deliberate delay on the part of the state. Second, defendant claims that the delay prejudiced him by impairing his ability to present a defense and locate witnesses. However, as the trial court noted, if defendant himself could have located the witnesses, he could have just as easily revealed their location to subpoena them. We find that defendant failed to demonstrate prejudice and was not denied his constitutional right to a speedy trial.[1] Therefore, we find that this first assignment of error lacks merit.

JURY SELECTION
As his second assignment of error, defendant maintains that the trial court erred in denying his challenge for cause concerning Clayton Causey. Defendant claims that because his challenge for cause was denied, and because the state did not challenge Causey, he had to use a peremptory challenge against Causey, which resulted in the eventual depletion of his peremptory challenges. Because the record shows that defendant exhausted all of his peremptory challenges, he may raise this issue on appeal as possible reversible error. State v. Vanderpool, 493 So.2d 574 (La. 1986).
The trial court is vested with broad discretion in ruling on a challenge for cause, and we will not disturb that ruling on appeal absent a showing of an abuse of that discretion. A review of the entire voir dire, and not selected portions, is essential to determine if the trial court erred. State v. Gintz, supra. A challenge for cause is not warranted when a prospective juror makes a statement which may be prejudicial to the defendant, but is later rehabilitated by further inquiry or instructions by the court, and demonstrates the ability and willingness to decide the case impartially according to the law and evidence presented in court. Id.; See, State v. Johnson, 469 So.2d 1099 (La.App. 2nd Cir.1985) in which the Second Circuit found no error by the trial court in denying defendant's challenge for cause to a juror who, on voir dire, initially stated that he would be generally inclined to give greater weight to the testimony of a deputy sheriff then to that of a lay witness. In State v. Johnson, the trial court explained the laws of weighing witness testimony. The juror then assured the court he would weigh the evidence accordingly. Thus, the juror was successfully rehabilitated.
The record contains the following colloquy during voir dire:
"Q: Do you think in a trial setting, Mr. Causey, you'd be more likely to believe a *866 law enforcement officer than some other person?
A: No, sir.
Q: And if my client's testimony contradicts the testimony of a law enforcement officer, which do you think you'd be more likely to believe if all other factors were equal?
A: Probably be more likely to believe the police officer.
Q: Okay. Now, do you think that might prevent you from being fair?
A: It might.
Q: Could you elaborate on that some?
Why would you be more likely to believe a police officer, Mr. Causey?
A: Well, it's justI don't know. I think a police officer would by pretty believable.
Q: ... You think that would prevent you from being fair, then, if you were already predisposed to believe the police officers over other persons?
A: It probably would, yes, sir."
However, the trial court then rehabilitated Causey as follows:
"Q: All right, Mr. Causey, it appears to the Court that it may be helpful for the jury and the venire to understand something about witnesses before we proceed with this. Every witness that takes that witness stand takes an oath to tell the truth, and as they begin testifying, every witness, whether he be a police officer or an accused or any other person, starts out in an equal footing from that stand. But the jurors are called upon to determine the credibility or the believability of the witnesses, and there are some standards by which you do that, and those standards will be read to you at the conclusion of the trial. But I'm going to read them to you now so that you can understand a little better how you look at a witness, and maybe some of these questions that are being asked on voir dire which are kind of hard, really, to answer sometimes will make a little more sense to you. In determining the weight and credibility of the evidence and the witness's testimony, you can consider many factors, among which are, "Is the witness able to see or hear or know the things about which the witness testified? How well was the witness able to recall and describe those things? What was the witness's manner while testifying? How did he act on the stand? Did the witness have an interest in the outcome of the case or any bias or prejudice concerning any party or any matter involved in the case? How reasonable was the witness's testimony considered in the light of all of the evidence that you heard during the trial? Was the witness's testimony contradicted by what the witness himself or herself has said or done at another time or by the testimony of other witnesses or by other physical evidence?" Now, those are some of the factors that you can consider in weighing a witness. And so you can see that regardless of whether that witness is the accused or a law enforcement officer, there are objective ways of looking at what they say in weighing the believability of their testimony. Now, having stated that to you, Mr. Causey, you've indicated that you would have a pre-disposition, perhaps, to believe a law enforcement officer. Is that pre-disposition such that you would not be able to do the things that I will instruct you to do at the termination of the trial about in thinking about these witnesses' testimonies and weighing the law enforcement officers' testimony? Would you be able to put aside the fact that he is a law enforcement officer and weigh his testimony in the same fashion that I just described here as you would any other person that may be involved in the trial, including the defendant?
A: Yes, sir."
After a review of the entire voir dire of Causey, including the trial court's rehabilitation of him, we do not find that the trial court abused its discretion in denying defendant's challenge for cause. Therefore, we find that this assignment of error is meritless.
Next, defendant assigns as error the trial court's refusal to question a juror, Arnold Moses, concerning statements made *867 after the jury voir dire began. The manner of conducting jury selection and voir dire examination is largely left to the discretion of the trial court, and defendant must show that the trial court abused this discretion. Moreover, if the comment in question is nonprejudicial, we may find that the trial court's refusal to question Moses is harmless. State v. Rubbicco, 550 So.2d 219 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1258 (La.1990).
Larry Basco, a prospective juror who was excused peremptorily by the state, testified outside the presence of the remaining members of the venire that he overheard Moses state that "if they would take some of these drug dealers and shove about one-half pound of cocaine down their throat, it would stop some of this crime." Apparently, Basco reported these overheard remarks to defense counsel during a recess, after Moses had been seated as a juror. Basco was asked by the trial court whether there was any discussion about this particular defendant, and he said there was not. He further stated that a person whose description fit that of Causey overheard it.
Causey, however, denied overhearing such comments from Moses. He did state, however, that he himself said, "`I don't feel sorry for no drug dealer if they get caught.' And [Arnold Moses] just more or less agreed with me." He assured the trial court that his comments did not presume the guilt of this particular defendant.
Interestingly, after testifying concerning Moses's alleged remarks, Basco volunteered, apparently in an effort to be relieved from jury duty, that "the reason I'd come back here was to ask to be excused because when they asked me and went into the details a while ago on if I had any resentments toward law enforcement, I do, and I went ahead and said yes. But I do, because one time they dropped some hash and stole it and charged me with distribution."
We find, based on Basco's demeanor and credibility, and Causey's testimony, that defendant failed to demonstrate that Moses made remarks which prejudiced defendant. Moses's alleged statements did not address the guilt or innocence of this particular defendant, but, rather, seem to be merely a general reference about drug dealers. We agree with the trial court that:
"even if we accept [the statement] at face value, what he said does not necessarily say that Mr. Moses will prejudge this defendant. And as the jury is not involved in the punishment phase of the trial at all, if Mr. Moses feels this way about a person who distributes drugs, then that doesn't presume that he is going to find everybody who is charged with a distribution of drugs guilty of that charge. And I don't feel that there's been sufficient prejudice demonstrated in this hearing upon which to tamper with the jury selection process as we have begun it."
Thus, we find that the trial court did not err in refusing to question Moses.[2]
Defendant attacks the trial court's refusal to quash the entire venire based upon the statements allegedly made by Moses. Generally, when a prospective juror makes a comment which arguably taints a panel or venire, the defendant moves for a mistrial or admonition pursuant to LSA-C.Cr.P. Art. 771 or 775. See State v. Kohler, 434 So.2d 1110 (La.App. 1st Cir.1983). The defendant also may request a challenge for cause. In the present case, the defendant did not request a mistrial, nor admonition, but requested that the entire venire be quashed.
LSA-C.Cr.P. Art. 419 limits the grounds for quashing a petit jury venire. The article provides:
"A. A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has *868 been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race. B. This Article does not affect the right to challenge for cause, a juror who is not qualified to serve."
Defendant failed to establish irreparable injury due to the alleged statement and failed to show that the statement tainted the entire panel. In fact, the only other witness to Moses's remark did not recall it. Without supporting evidence, we cannot say that the trial court abused its discretion in denying defendant's motion to quash the petit jury venire.

EXPERT TESTIMONY
Defendant contends that the trial court erred in its qualification of Wendy Reed in the field of laboratory analysis of marijuana. LSA-C.E. Art. 702 provides:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."
The fact that Reed was being qualified for the first time should not prevent her from being recognized as an expert. State v. Prater, 583 So.2d 520 (La.App. 3rd Cir. 1991). Furthermore, the competence of an expert is a question of fact within the sound discretion of the trial judge, and his rulings on the qualifications of an expert witness will not be overturned absent manifest error. Id.
The record shows that Reed is a medical technologist, and that she worked as an analyst at the Southwest Regional Crime Lab from April 15, 1991, to early December, 1991, as a serologist and analyst of substances believed to be marijuana. She has a bachelor of science degree in medical technology with a minor (36 hours) in chemistry. From her graduation in 1979, until her employment with the crime lab in 1991, she worked in hospital labs doing drug testing, utilizing her chemistry background on a daily basis. Once Reed began working at the crime lab, she began on the job training under Damon Billiot in marijuana testing and drug analysis. She performed approximately 110 tests, evaluating substances believed to be marijuana, before she was permitted to work on her own and sign her own reports. At the time she analyzed the substance proven to be marijuana in this case, she had completed her training period at the crime lab and was able to sign her own reports.
Our complete and careful review of the facts pertinent to this issue lead us to conclude that the trial court did not err in accepting Reed as an expert in the analysis of marijuana. Thus, we find this assignment of error lacks merit.

AUDIOTAPE
Defendant complains that the trial court erred in not allowing defendant's brother-in-law and mother to listen to the audiotape of the February 28, 1991, sale of cocaine in order to opine whether one of the voices was defendants.
When Officer Pinchon went to the Merryville Housing Project to purchase cocaine from the defendant, she was wearing a body mike, a small microphone taped to her body which transmitted the conversation to Deputy Wilson who was conducting surveillance. The audiotape was introduced into evidence, and the trial court allowed Officer Pinchon to identify the voices on the tape. The basis of the trial court's ruling was that, as a participant in the transaction, she knew what was said by whom. Officer Pinchon had the opportunity to view defendant and was in a unique position to identify the speakers on the tape obtained from the body mike she was wearing.
During defendant's defense, he sought to have his mother and his brother-in-law, who is also his closest friend, listen to the tape and identify any of the voices. The trial court explained that since neither of defendant's witnesses were present at the time the taped conversation was conducted, *869 defendant would have to lay a foundation to qualify the witnesses as voice identification experts, since their testimony would be that of an opinion. Defendant failed to qualify the witnesses as experts, and the trial court would not allow them to identify the voices.
In brief, defendant argues that LSA-C.E. Art. 701 permits a lay witness to give an opinion if it is reasonably based upon the perception of the witness and helpful to the determination of a fact at issue. As the trial court noted, the jury itself could compare the defendant's voice which they heard when he testified in court to the voices on the tape recording. As such, the lay opinion testimony of defendant's mother and brother-in-law would not be helpful to the jury's determination of whether one of the voices was defendant's. Furthermore, the voice identification was not essential to either his arrest or his conviction. Instead, he was arrested and ultimately convicted based on physical identification by eyewitnesses who bought contraband from the defendant.
A careful review of this issue leads us to conclude that the trial court did not abuse its discretion in its disposition of this matter.

TESTIMONY OF DISTRICT ATTORNEY'S INVESTIGATOR
Defendant asserts that the trial court erred in allowing James McCarty, the district attorney's investigator, to testify since he had not been placed under the rule of sequestration.
LSA-C.E. Art. 615 provides in pertinent part:
"Art. 615. Exclusion of witnesses
A. As a matter of right; exceptions.
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize the exclusion of:
* * * * * *
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney; ..."
Comment (d) to this article recognizes the potentially prejudicial situation in criminal cases when a law enforcement officer who is designated as the state's representative is expected also to testify as a fact witness. The comment warns that in such situations, the court should take appropriate measures to minimize the possibility of prejudice.
In the present case, testimony elicited from defendant's brother-in-law, Michael Thornton, on March 17, 1992, revealed, for the first time, that defendant was presenting an alibi defense in connection with the charge arising from the incident of February 28, 1991. State investigators, including McCarty, spoke with Roger Beason at the Beauregard Parish jail that same night, in anticipation of calling him as a rebuttal witness for the state. The state, however, chose not to call him as a witness because Beason told McCarty and another deputy that he did not want to get involved.
The next day, defense counsel, however, requested an instanter subpoena for Beason. Beason testified on behalf of defendant that defendant was not with him in Merryville on February 28, 1991. The state then realized that it needed McCarty for rebuttal of Beason's testimony and had McCarty wait outside the courtroom during the proceedings on March 18, 1992. When the state called McCarty, defendant objected that McCarty had been in court as the state's case agent throughout the trial. The state responded that it had no idea that it would have to call McCarty to testify.
Wide discretion should be afforded the trial court when resolving sequestration problems. The facts of the individual case should be considered by the reviewing court to determine whether defendant was prejudiced by the sequestration violation. State v. Ondek, 584 So.2d 282 (La.App. 1st Cir.1991), writ denied, 586 So.2d 539 (La. 1991). In the present case, McCarty was *870 not called as a fact witness in the state's case-in-chief, but was called to testify as to his own knowledge of the facts merely as rebuttal to Beason's testimony. He could not have been influenced by Beason's testimony as he was not present in court when Beason testified. We find that McCarty fell into the exception to the sequestration rule because he was the case agent, but defendant was not prejudiced when McCarty testified as a fact witness because the trial court and state took appropriate measures to minimize the possibility of prejudice to defendant. Thus, we find this assignment of error lacks merit.

UNDISCLOSED NAME OF CONFIDENTIAL INFORMANT
Next, defendant complains that the trial court erred in not allowing disclosure of the identity of a confidential informant. Both times Officer Pinchon purchased narcotics from defendant, a confidential informant either accompanied her or defendant to the scene of the sale. Specifically, during the February 18, 1991, transaction, the informant introduced defendant to Officer Pinchon and Carrier.
Defendant argues that the trial court erred in sustaining the state's objection to defendant's request to reveal the identity of the confidential informant, and violated his constitutional right to confront witnesses against him. From the record, we determine that the informant merely introduced the officers and defendant during the February 18th transaction, and did not participate in the actual negotiations for sale of marijuana and cocaine. Because the informant was not an active participant in the narcotics purchase, disclosure of his identity is not required. State v. White, 508 So.2d 982 (La.App. 3rd Cir.1987), writ denied, 512 So.2d 1184 (La.1987). Therefore, we find that this assignment of error lacks merit.

OTHER CRIMES EVIDENCE
As his final assignment of error, defendant contends that the trial court erred in not granting defendant's motion for mistrial when a state witness's response to a specific question by the state disclosed "other crimes" evidence concerning defendant, and of which defendant had been given no notice.
Defendant specifically objects to the following portion of Officer Pinchon's testimony:
"Q: So [defendant] showed you two bags?
A: Yes.
Q: What did he say was in those bags?
A: He said cocaine. He said, `but I pinched out of the hundred dollar one.'
Q: And what did that mean to you?
A: He used some of it out of it."
Defense counsel immediately objected, and, in a sidebar conference, argued that this constituted other crimes evidence of possession and use of cocaine, which was not part of the res gestae, and then moved for a mistrial. Conversely, the state argued that this evidence of defendant's possession of cocaine was a responsive verdict to the charge of distribution; thus, it was not error to introduce it. The state argued that any error could be cured by an admonition to the jury. Defendant, however, did not request an admonition or limiting instruction to the jury. The trial court denied defendant's motion for mistrial, but warned the state not to explore the issue further.
The witness's spontaneous and unsolicited admission that defendant used some of the cocaine was part of the res gestae, which excepts it from the prohibition of the other crimes evidence. See, State v. Brewington, 601 So.2d 656 (La. 1992); State v. Prater, supra. Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the prosecution could not accurately present its case without reference to them. State v. Prater, supra.
In the present case, defendant negotiated with Officer Pinchon, then left for twenty minutes before returning to sell her the $100 bag of cocaine. Without evidence that the defendant had taken out part of the $100 bag of cocaine, the jury could not *871 have understood why defendant had to go to an apartment to replace the missing cocaine in the $100 bag. This evidence was intertwined into the charged offense and necessary to complete the context of events. Therefore, we find no error in denying defendant's motion for mistrial.

PRESCRIPTIVE PERIOD FOR POST-CONVICTION RELIEF
Our review of the record reveals an error patent. LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post conviction relief. However, this does not constitute grounds for reversing the sentence or remanding the case for resentencing. LSA-C.Cr.P. Art. 921. We instruct the trial court to inform defendant of the provisions of LSA-C.Cr.P. Art. 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. State v. Porter, 615 So.2d 507 (La.App. 3rd Cir.1993).
Notice of LSA-C.Cr.P. Art. 930.8 shall be given to defendant in accordance with this opinion. In all other respects, and for the above and foregoing reasons, the judgment of the trial court denying defendant's nine assignments of error is affirmed.
AFFIRMED.
NOTES
[1] The trial court also suggested as an alternative solution that defendant file a motion to reconsider the setting of bond limits. Defendant did not do so.
[2] This problem arose during jury selection, but neither the transcript nor the court minutes indicate whether defendant had any peremptory challenges remaining at the time of this hearing. This is important because even though Arnold Moses had been temporarily accepted as a jury, he could have been peremptorily challenged up until the entire juror panel was selected and sworn. LSA-C.Cr.P. Art. 795 B(1). If defendant still had a peremptory challenge remaining, he could have excused Moses.