635 So.2d 499 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Frank DIAZ, Defendant-Appellant.
No. CR93-1309.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*501 Todd Samuels Clemons, Paul Peter Reggie, Lake Charles, for State of LA.
Walter Marshall Sanchez, Lake Charles, for Frank Diaz.
Before KNOLL, COOKS and WOODARD, JJ.
KNOLL, Judge.
Defendant, Frank Diaz, was arrested on March 25, 1992, and charged with possession of over four hundred grams of cocaine, a violation of LSA-R.S. 40:967 C. Defendant's first trial ended in a mistrial on January 11, 1993, because the jury could not agree on a verdict. Two weeks later, defendant's second trial resulted in a verdict of guilty as charged. Shortly after the defendant's conviction, his trial counsel, Robert Patrick, withdrew and defendant hired Walt Sanchez to pursue his post-verdict motions and appeal.
After the trial court heard testimony on defendant's motion for new trial and denied the motion, the defendant was sentenced to 15 years at hard labor without parole, and fined $250,000.00 with five months hard labor imposed in default of payment.
On appeal, defendant has expressly abandoned his first assignment of error and the two remaining assignments of error concern ineffective assistance of counsel at trial.
Usually, a claim for ineffective assistance of counsel is more properly raised in an application for post-conviction relief. State v. Burkhalter, 428 So.2d 449 (La.1983). This enables the trial court to order a full evidentiary hearing on the matter. State v. Seiss, 428 So.2d 444 (La.1983). However, where the record contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue can be considered.
In the case sub judice, we find that the hearing on defendant's motion for new trial was the equivalent to an evidentiary hearing on an application for post-conviction relief. Therefore, we will address the merits of defendant's claim of ineffective assistance of counsel.

FACTS
On March 25, 1992, Lieutenant Dennis Drouillard and Officer Johnny Vice of the Vinton Police Department stopped a 1977 Chevy van for speeding. The driver and only occupant of the van was defendant, Frank Diaz.
The police noticed that defendant was extremely nervous, even after they had informed him they had simply stopped him for speeding. Defendant had a valid Georgia driver's license and when he returned to his van to retrieve other papers requested by the police, Lt. Drouillard saw a green plant-like substance and a marijuana seed in the ashtray in the driver's door. Defendant admitted at trial he had marijuana in the van for his personal use and he had been smoking it during his trip. When questioned about the suspected marijuana, defendant told the police *502 he had no narcotics in his van. Defendant signed a consent to search form. When Lt. Drouillard felt under a small refrigerator set inside of a cabinet in the van, he found four bundles of suspected cocaine. Defendant was arrested, and while Lt. Drouillard and Officer Vice were discussing towing the van to the police station for a more thorough search, defendant told them that there were no more drugs in the van. Actually, a bag of marijuana was later found in the area of the sunroof. The cocaine seized weighed 4.71 pounds, or 2,137.7 grams.
While defendant was being processed at the police station, Lt. Drouillard first commented that he thought the bundles of cocaine weighed two kilograms and then later said the cocaine weighed four kilograms. Lt. Drouillard testified that defendant became upset because the police increased the amount of cocaine found in his van.
Defendant testified at his second trial and claimed he had no knowledge of cocaine in his van. Defendant said that many people drove his van: his two roommates, his boss, the foreman and supervisor. Yet, at the time of his arrest, defendant told the police no one else ever drove his van. Defendant admitted he had marijuana in his van, that he was very nervous because he had remained in the country illegally, and was concerned the police would discover this and have him deported. Defendant explained that he worked for Spinos Concrete Business in Atlanta, Georgia, and he drove to Beaumont, Texas, to deliver equipment to a company called Beaumont Concrete Services. It was while defendant was returning to Atlanta from Beaumont that he was stopped.

INEFFECTIVE ASSISTANCE OF COUNSEL
Assignment of error number two concerns ineffective assistance of counsel at trial, and assignment of error number three concerns the trial court's denial of defendant's motion for new trial based upon ineffective assistance of counsel at trial. We will discuss these two assignments together since both are interrelated and arise from the claim of ineffective assistance of counsel.
In Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-part test to apply in addressing a claim of ineffectiveness of counsel.
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
An attorney is not required to be errorless to be effective. As this court noted in State v. Harris, 540 So.2d 1226, 1230 (La.App. 3rd Cir.1989), writ. denied, 550 So.2d 626 (La.1989):
"Effective assistance of counsel does not, however, mandate errorless counsel or counsel which might be judged ineffective only in hindsight. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of the attorney's challenged conduct and to evaluate the conduct of the attorney from his perspective. A reviewing court may only then decide if a defendant was prejudiced by ineffectiveness."
Defendant was arrested on March 25, 1992, and at his arraignment after indictment, Robert Patrick was retained as counsel for the defendant. Patrick filed and argued pretrial motions, such as the motion to suppress. Patrick represented defendant at his first trial which was declared a mistrial after the jury could not reach a verdict. Patrick represented defendant at the second trial which resulted in the defendant's conviction *503 on January 29, 1993. Thereafter, on February 12, 1993, Patrick withdrew and on April 13, 1993, Walt Sanchez was enrolled as counsel for defendant. Defendant was represented by Sanchez at the August 13, 1993, hearing on his post-verdict motions and his sentencing.
On appeal, defendant argued four specific examples of his counsel's ineffectiveness and then argues a "catch all" claim.
Claim number one. Allowing the defendant to take the stand.
The first example of alleged error by Patrick was his decision to allow defendant to testify at the second trial. Defendant did not testify at his first trial. Appellate counsel argues that because the first trial did not result in a guilty verdict, but the second trial did, the decision to allow defendant to testify was prejudicial error.
In Louisiana, a criminal defendant has a right to testify in his own behalf under the due process clause of the Fourteenth Amendment, the compulsory process clause of the Sixth Amendment, and the privilege against self-incrimination under the Fifth Amendment to the United States Constitution, and Article I, § 16 of the Louisiana Constitution. State v. Holden, 554 So.2d 121, 124 (La.App. 2nd Cir.1989). Trial counsel could not have prevented his client from testifying. At the hearing on the motion for new trial Patrick was asked whether he discussed defendant testifying at the second trial. Patrick stated:
"I don't know exactly. It could have been very well at both. But, I have a policy that if you got a conviction, you certainly don't take the stand. If you don't have a conviction, you still don't want to take the stand. But, only if my client, you know, requests to take the standand a lot of times, and my understanding, and my practice of law, clients are eager to want to tell their side of the story. But, I always hasten and advise them of the trappings there. Though that they may think that it's a good seasoning to go and testify, they also subjecting [sic] themselves to cross examination. And if their character ever come into question, then all that you have worked for in the build of the defense, the jury now is gonna have a question of whether or not you were telling the truth or not and probably forget about all that you've done and now focus on the character of the individual, and it would probably hurt them more than help them."
Our review of defendant's trial testimony shows a witness who was candid and apparently wanted the jury to think he was not a drug carrier or "mule" and instead he was a hardworking family man trying to live the American dream. Even without defendant's testimony the State's evidence was sufficient to establish defendant's guilt. The "prejudice" which Strickland discusses is not simply any action or failure to act by trial counsel which places evidence before the jury detrimental to a defendant's claim of innocence. Instead the prejudice arises from deficient performance so serious that it deprives defendant of a reliable result, or verdict. As the court in Strickland noted 466 U.S. at 688, 104 S.Ct. at 2065:
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable....
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' ....
There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citations omitted.)
*504 After carefully reviewing the record, we find that defendant failed to establish error or deficient performance on the part of trial counsel simply because defendant chose to testify at the second trial. The fact that the first trial, at which defendant did not testify, resulted in a mistrial does not mean that the jury was leaning toward acquittal. Therefore, without establishing error, defendant has failed to meet the first part of the two part test of Strickland. Even if we were to assume error, defendant still has failed to establish clearly that without his testimony, he would have been acquitted. Clearly the State's evidence was sufficient for a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements established beyond a reasonable doubt.
Therefore this claim of ineffective assistance of counsel is without merit.
Claim number two. Improper cross-examination of the defendant and violation of the rule of sequestration.
Before defendant's second trial, the State was not aware of the nature of the defendant's trip to and from Texas. When defendant took the stand in his second trial, he explained that he worked for Spinos Concrete Business in Atlanta, Georgia, and he went to Beaumont, Texas, to deliver a drill and jackhammer to Beaumont Concrete Services located on Louis Street. Defendant testified that he left the van at the shop in Beaumont, went to eat lunch at a nearby Hardees, and when he returned the van was unloaded. Defendant testified that he had nothing to hide when the Vinton Police stopped him and that he signed the consent to search form in order to cooperate. Defendant denied he told the police there were no more drugs in the van.
At the second trial defense counsel did not enter a contemporaneous objection to the line of questioning to which appellate counsel now objects. The State began cross-examination of defendant as follows:
"Mr. Diaz, first, I want to thank you for providing us with your testimony. I realize you didn't have to and I appreciate you giving us your version. You say you're from Venezuela?"
It is apparent that the information defendant gave on direct examination was not known to the State. While defendant was testifying, the State investigator telephoned to verify defendant's employment at Spinos Concrete Business and called to see if there was a business on Louis Street in Beaumont, Texas, called Beaumont Concrete Services. The information he received was relayed to the State who asked defendant the following questions:
"Q Now, the city you say you were coming from, can you spell it for us? I'm not sure if I got the right city. Did you say Beaumont?
A Yes.
Q And the business, I want to make sure I got this right, Beaumont Concrete Service?
A Yes.
Q What if I tell you, Frank, that I got information that company never existed?
A It's not my fault, Mr. Clemons.
Q You got to do better than that.
A Huh?
Q You got to do better than that. It's not your fault that it doesn't exist?
A Well, there was a shop and there was people working there.
* * * * * *
Q What's your boss's name, by the way?
A Felix Espinoza, spells E-s-p-i-n-o-z-a.
Q So if I went and called him right now, he'd tell me that on March 25th he sent you to Beaumont to pick up concrete?
A Yes, sir.
Q Do you have a number where I can reach him at?
A Yes, sir.
Q What's that?
A (404) 267-0467.
Q 404 what?
A 267-0467.
Q So the fact that this company never existed you said you can't explain that?

*505 A No, I can't explain that. I went to so many places. Even I went to shops in Atlanta itself that didn't have no names.
* * * * * *
A No, No. I dropped the van and I said I'm going to go eat some Hardee's and so, okay, go ahead.
Q Frank, It's looking bad. This number you gave me, they said they never heard of Frank Diaz.
THE COURT: Will counsel approach the bench?
[BENCH CONFERENCEREPORTER NOT IN ATTENDANCE]"
Appellate counsel claims that the State's questioning violated the Rules of Professional Conduct and the rule of sequestration of witnesses. The sequestration problem allegedly arises because the investigator became a potential witness, and was not under the rule of sequestration, yet, was in the courtroom during defendant's testimony. Appellate counsel further claims that even if the State did not violate the rule of sequestration, the State's assertions of fact in his questioning of defendant violated several Rules of Professional Conduct, Rules 3.4(e), 3.5(a), and 3.7. Appellate counsel also claims that the State's questions assumed facts not substantiated and placed the credibility of the prosecutor before the jury.
With regard to the first claim, we have found that an investigator may testify even if he was not placed under the rule of sequestration at the beginning of trial and remained in the court as the case agent for the State. In State v. McSweeney, 619 So.2d 861 (La.App. 3rd Cir.1993), defendant first presented an alibi defense during the testimony of one of the defense witnesses at trial, and the State's investigator questioned the defendant's co-defendant that evening about testifying in rebuttal. Although the co-defendant told the State investigator he did not want to get involved, the next morning an instanter subpoena was requested for the co-defendant and the co-defendant testified on behalf of defendant. The State's investigator waited outside the courtroom and when he was called as a rebuttal witness, defendant objected citing the rule of sequestration. This court ruled that the State's investigator was a rebuttal witness and was not influenced by the co-defendant's testimony and that under the facts of that case, no violation of the rule of sequestration occurred. Id., at 869-870.
We note that when the State is presented with surprising testimony, the appellate courts have allowed the prosecutor to testify as a rebuttal witness. See State v. Miller, 391 So.2d 1159 (La.1980); State v. Rowe, 489 So.2d 1069 (La.App. 1st Cir.1986); and State v. Blunt, 449 So.2d 128 (La.App. 4th Cir. 1984). The error, if any, is considered harmless.
On the other hand, the State may not make testimonial assertions in its questions or argument. An attorney may not refer to matters allegedly within his personal knowledge but not in evidence. LSBA-Rules of Professional Conduct-Rule 3.4(e); State v. Kaufman, 304 So.2d 300 (La.1974); and State v. Bretz, 394 So.2d 245 (La.1981). Usually, the problem arises in the closing argument of the prosecution. See e.g. State v. Prestridge, 399 So.2d 564 (La.1981).
On one occasion, we were faced with a problem of the State's question improperly referring to facts not in evidence but within the State's personal knowledge. In State v. Floyd, 544 So.2d 616 (La.App. 3rd Cir.1989), an eyewitness to an accident was called to testify on behalf of the State, yet gave testimony favorable to the defendant. Under the guise of surprise, the State attempted to impeach its witness by referring to an alleged prior inconsistent statement never introduced into evidence and in which the witness told the State that the defendant was guilty yet she would testify in the defendant's favor because the defendant gave her money. We found this to be error because the inadmissible evidence was offered only for its substantive effect as to the defendant's guilt and not for impeachment of the witness. Id. at 619. Thus, we found this error reversible because the witness's testimony was otherwise sufficient to cast reasonable doubt on the State's evidence against the defendant.
*506 In the case sub judice, the State was attempting to impeach defendant's testimony about who his employer was, and where he had been in Texas. The State was not attempting to introduce substantive evidence of defendant's guilt. The questioning attempted to introduce evidence casting doubt upon the credibility or believability of the defendant. Even if the State had not asked defendant any questions on cross-examination, the jury would have been free to accept or reject, in whole or in part, defendant's testimony. State v. Jeansonne, 580 So.2d 1010 (La.App. 3rd Cir.1991), writ. denied, 584 So.2d 1170 (La.1991). Furthermore, if the State had introduced inadmissible evidence that defendant did not work for Spinos Concrete Business and that there is no Beaumont Concrete Service in Beaumont, Texas, this evidence simply would have impeached defendant's credibility, but would not have been substantive evidence of the defendant's guilt.
As the record shows, the State impeached defendant's credibility by other admissible evidence and proper questions. For example, defendant claimed at trial he signed a consent to search in a spirit of cooperation, yet the State introduced defendant's testimony at the prior hearing on the motion to suppress at which defendant said he signed the form because he was threatened. Defendant admitted he lied to the police when he said there were no narcotics in his van, yet he knew his illegal marijuana was in the van. Defendant also claimed he brought personal items and an extra pair of blue jeans for his overnight stay, but the police never found these items inside the defendant's van.
If the defendant's trial counsel had made a contemporaneous objection to the State's questions, and this court was reviewing this issue on appeal, we would find that the error was harmless since the objectionable questions concerned defendant's credibility, and defendant's credibility was impeached by other proper questions and evidence. Accordingly, we find defendant has failed to establish prejudice as a result of trial counsel's failure to object at trial. Furthermore, we found that without the objectionable questions, the outcome of defendant's trial would have been the same.
Claim number three. Failure to record bench conferences.
Appellate counsel claims that trial counsel was ineffective because he failed to have the court reporter record all bench conferences at which objections were argued. This court has previously addressed this contention in State v. Richardson, 529 So.2d 1301 (La.App. 3rd Cir.1988), writ. denied, 538 So.2d 587 (La.1989), where we held that the missing arguments were deemed "an inconsequential omission, immaterial to a proper determination of the appeal." Id., at 1308; see also, State v. Velez, 588 So.2d 116, 135 (La.App. 3rd Cir.1991), writ. denied, 592 So.2d 408 (La.1992), cert. denied, ___ U.S. ___, 112 S.Ct. 3031, 120 L.Ed.2d 901 (1992). In the case sub judice, trial counsel testified at the hearing on the motion for new trial and explained what occurred at the bench conferences. Furthermore, appellate counsel does not specify how defendant is prejudiced or how this court is rendered unable to rule on an objection, if any. Therefore, we find that defendant has established no error in the trial counsel's failure to have all bench conferences recorded.
Claim number four. Other crimes evidence.
Appellate counsel complains that the State's questioning of defendant about his status as an illegal alien violated the prohibition against the introduction of other crimes evidence without having a Prieur notice and hearing. Appellate counsel argues defendant was prejudiced because trial counsel did not object or request a mistrial nor admonition as provided by LSA-C.Cr.P. Art. 770(2) and that this prejudice affected the outcome of defendant's trial.
Although our review of the record confirms appellate counsel's claim that no Prieur notice was filed, an examination of the trial transcript shows the true context in which the other crimes evidence was presented. During direct examination of the State's witnesses, the prosecutor never asked about defendant's status as an illegal alien. The matter first came up during the defense counsel's cross-examination of Officer Vice. Although the State did ask a question on redirect examination of Officer Vice to clarify *507 matters, the State never brought up the matter again until the cross-examination of defendant. When defendant took the stand his trial counsel never asked him if he was an illegal alien. However, in a non-responsive answer to his trial counsel's question, defendant admitted he knew he had remained in the United States illegally. The line of questioning to which appellate counsel objects occurred during cross-examination of defendant after his spontaneous admissions during direct examination.
The State is prohibited from referring to other crimes committed by defendant as to which evidence is not admissible. LSA-C.Cr.P. Art. 770(2). In the present case, the State did not first bring out the issue of defendant's status as an illegal alien, but trial counsel for defendant did. Furthermore, when defendant testified, he spontaneously admitted in a non-responsive answer that he was an illegal alien.
The Prieur rule prevents the State from introducing other crimes evidence unless it is admissible as part of the res gestae, as a conviction used for impeachment of a witness, or as an act relevant to show knowledge, intent, or system. In the present case, defendant introduced the other crimes evidence. As the Supreme Court noted in Strickland, certain trial strategies may appear in hindsight to provide ineffective assistance of counsel yet at the time of trial were the product of sound and informed professional judgment on how to defend a client. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Defendant explained on direct examination:
"Q Did you act nervous when you got out of your van?
A Of course. Everybody got nervous. I got nervous because I never been pulled by police before. I never been stopped by police before in my life. It's like if I'm in front of a police officer, I have to be nervous, but I was nervous because I didn't know what I was being pulled over, and I was nervous because I was in a strange place, and I was nervous mostly because he asked me for immigration papers and I was thinking that immigration might come and get me or get me deported or something like that."
In the comments to LSA-C.Cr.P. Article 770, it states:
"(e) The article does not deal with defense counsel's remarks that are prejudicial to the defendant. The defendant can not get relief from that sort of error anymore than he can from other errors made by his counsel."
Our research has not located a reported Louisiana case in which a defendant is the first to refer to other crimes evidence and then objects whenever the State follows up on this evidence. Customarily, whenever a defendant "opens the door," the State may walk through it, but it is not necessarily a license to exploit defense counsel's inattention, omission, or mistake by repeatedly referring to prejudicial comments. See State v. Smith, 418 So.2d 534, 537 (La.1982). When viewing the context in which defendant's status as an illegal alien arose, it appears that defendant was using it as a defense or as a means of obtaining the jury's sympathy. Also, this evidence may be considered admissible because it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without referring to it, State v. Brewington, 601 So.2d 656, 657 (La.1992), or the defendant could not have presented his defense without referring to it.
We find that once defendant opened the door, the State could have sought clarification of this issue. The State's questions were not so prejudicial that we could say the State simply wanted to inflame the jury against defendant. To the contrary, defendant seems to have been seeking the jury's sympathy and understanding. Moreover, defendant was also trying to explain that the reason he was nervous after the police stopped him was not because he knew illegal drugs were in the van, but because he knew he was an illegal alien and feared deportation.
Therefore, we find that there was no violation of the rule against referring to other crimes evidence. Without a violation of LSA-C.Cr.P. Art. 770(2), no error on the part of trial counsel occurred for failing to object.
*508 Claim number five. Totality of the circumstances.
Defendant again raises the failure of his trial counsel to record the bench conferences. Also, appellate counsel contends that Patrick's failure to visit and confer with his client prevented him from developing sound defense strategy and also led to the decision to allow the defendant to testify.
At the outset, it was noted that a defendant has a constitutional right to testify under both the state and federal constitutions. If trial counsel had prevented defendant from testifying and a guilty verdict was returned, then defendant would not be complaining that trial counsel was ineffective because he did not allow defendant to testify.
A review of the trial transcript shows that trial counsel thoroughly cross-examined the police officers concerning certain inconsistencies in their trial testimony and previous testimony at the suppression hearing. Trial counsel objected to Detective Johnny Fryar testifying as an expert witness in narcotics and giving his opinion that defendant was a "mule" or a drug carrier. Furthermore, defendant certainly knew he did not have to testify at his second trial because he did not testify at his first trial. Finally, trial counsel may not have been able to subpoena anyone from Spinos Concrete Business to testify about defendant's employment, and even if a representative of Spinos Concrete Business had testified, he may have refused to answer any questions because it would have incriminated the business for hiring illegal aliens. He may also have denied defendant's employment and there may have been no written documents available for defendant to prove otherwise.
When we review the entire record, we do not find that defendant established ineffective assistance of counsel at trial. In hindsight some of trial counsel's tactics may not have been helpful and he may have made at least one error by failing to object. However, we do not find that the outcome of defendant's trial was affected. Even without defendant's testimony, which gives rise to most of these claims of ineffective assistance of counsel, we find that the evidence would have been sufficient to convict defendant.

ERRORS PATENT
A review of the record reveals several errors patent. LSA-C.Cr.P. Art. 880 provides that when imposing sentence the court shall give defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Thus, we will amend the sentence to reflect that defendant is given credit for time served prior to the execution of the sentence. See LSA-C.Cr.P. Art. 882A. Although resentencing is not required, we will remand this case and order the trial court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served. State v. Jones, 607 So.2d 828 (La.App. 1st Cir.1992), writ denied 612 So.2d 79 (La.1993).
LSA-C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the trial court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. LSA-C.Cr.P. Art. 921. The three year prescriptive period does not begin to run until the judgment is final under LSA-C.Cr.P. Art. 914 or 922, so prescription is not yet running. Apparently, the purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, we direct the trial court to inform defendant of the provisions of Article 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Reeves, 613 So.2d 1061 (La.App. 3rd Cir.1993), writ denied, 619 So.2d 543 (La.1993).
Another error patent concerns the failure to expressly waive the twenty-four delay between the denial of the motion for new trial and sentencing. LSA-C.Cr.P. Art. 873. However, defendant and his attorney did not object to the trial court immediately *509 sentencing defendant, they do not assign this failure as an assignment of error, and this court may find that defendant and his attorney impliedly waived this delay by their active participation in the sentencing of defendant. See, State v. Starks, 549 So.2d 409 (La.App. 5th Cir.1989). The prejudice resulting from the failure to honor the twenty-four hour delay would be reflected in the sentence defendant received. In the present case defendant received the statutory minimum sentence for possession of over 400 grams of cocaine. Therefore, defendant suffered no prejudice and this error, if any, is considered harmless. State v. Williams, 617 So.2d 557 (La.App. 3rd Cir.1993), writ denied, 623 So.2d 1331 (La.1993).

DECREE
For the foregoing reasons, defendant's conviction is affirmed, and this case is remanded to the trial court to amend defendant's commitment and minute entry of the sentence to reflect that defendant is given credit for time served. Additionally, the trial court is directed to inform defendant of the prescriptive period for post-conviction relief by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and file written proof of notice in the record of the proceedings.
AFFIRMED WITH INSTRUCTIONS.