583 So.2d 520 (1991)
STATE of Louisiana, Plaintiff-Appellee,
v.
Gary Neil PRATER, Defendant-Appellant.
No. Cr 90-1097.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1991.
*521 David L. Wallace, Martha A. O'Neal, DeRidder, for defendant-appellant.
David W. Burton, Dist. Atty., DeRidder, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and FORET and DOUCET, JJ.
DOUCET, Judge.
This is an appeal from the defendant's conviction on six counts of distribution of cocaine, a violation of La.R.S. 40:967A(1), and one count of distribution of marijuana, a violation of La.R.S. 40:966A(1), and a sentence of seven years on count one and five years on counts two through seven to run concurrently to each other but consecutively to the sentence on count one.
With the exception of one transaction, Gary Neil Prater, defendant herein, always dealt with Deputies Saul Wilson and John Jackson, who identified the defendant in court. Defendant also sold rock cocaine to Deputies Terry Skinner and Ronald Samples on April 26, 1988.
At the first purchase of rock cocaine on October 29, 1988, Deputies Wilson and Jackson were introduced to Gary Prater by Boone Williams. The agents met defendant at Northside Park in DeRidder and defendant was asked if he knew where the agents could get rock cocaine. Defendant said yes to their request and led them to the "Hole-In-The-Wall" located in DeRidder. Defendant then took the agents to a trailer south of DeRidder but within Beauregard Parish. Defendant went inside the trailer and came back with one stoney white rock of suspected cocaine. Defendant paid $25.00, given to him earlier by the deputies, for the rock cocaine.
On the evening of December 6, 1988, Deputies Wilson and Jackson drove to defendant's residence on Piper Street in DeRidder and saw defendant in the front yard. They called defendant over to their car and spoke with him about purchasing some rocks of cocaine. Defendant got into the car with Deputy Wilson and as they drove around the block, defendant took out a pouch containing suspected rock cocaine. Defendant offered the agents two rocks of *522 cocaine for $50.00, which they purchased. At trial, defendant claimed he was serving in the Army at Fort Devens, near Boston, Massachusetts, at the time the second transaction occurred on December 6, 1988.
On December 14, 1988, Deputies Wilson and Jackson were playing basketball at Northside Park in DeRidder, and afterwards, defendant offered to sell them rock cocaine. Defendant was given $25.00 and he returned from a car with one rock of cocaine.
On December 17, 1988, defendant sold marijuana to Deputies Wilson and Jackson while they were watching basketball at Northside Park. While they were sitting in their parked car, defendant approached them and told them he would have some crack to sell later. Deputy Wilson asked defendant first to get him some marijuana and then some cocaine. Defendant went to a white van parked behind the deputies' car and returned with a plastic bag of marijuana. Defendant told Deputy Wilson he would have the crack at the park at 8 p.m.
At approximately 8 p.m., defendant met with the deputies at the park and received $50.00 for two rocks of cocaine. Defendant told Deputy Wilson to return at 10 p.m. Defendant did not return until 12:30 a.m. on December 18, 1988. At approximately 12:30 a.m., defendant appeared with a matchbox containing three rocks of cocaine. Defendant gave Deputy Wilson two rocks and a few pieces, for his patience.
A few months later, on April 11, 1989, Deputies Wilson and Jackson saw defendant at his residence on Piper Street. Defendant got into their car and pulled out a matchbox with several rocks of cocaine. Defendant sold them one rock for $25.00.
The final sale by defendant occurred on April 26, 1989. Defendant sold cocaine to Deputies Terry Skinner and Ronald Samples. Skinner and Samples went to Northside Park and talked with some men. One of the deputies said he was "looking for something for the head", and defendant told him he could help. Defendant got into the deputies' car and they drove around DeRidder for 30 to 35 minutes until they stopped at the corner of Bishop and North Streets. Defendant left with $30.00 and the deputies picked him up 20 to 25 minutes later at the same corner. Then, they returned to the park and defendant pulled out a matchbox containing eight to ten rocks of cocaine. Defendant sold one rock for $30.00.
All the rocks of suspected cocaine were analyzed and determined to contain cocaine. The suspected marijuana also tested positive for marijuana.
The defendant was indicted on six counts of distribution of cocaine, a violation of La.R.S. 40:967A(1), and one count of distribution of marijuana, a violation of La.R.S. 40:966A(1). Defendant pled not guilty and was tried before a twelve-person jury. The jury found defendant guilty as charged on all seven counts on January 25, 1990. Defendant was later sentenced to seven years at hard labor for count one, distribution of cocaine. For counts two through seven, he was sentenced to five years on each count to run concurrently to each other but consecutively to count one, for a total of twelve years at hard labor.
Defendant appealed assigning eleven assignments of error. Upon filing his appellate brief, defendant abandoned assignments of error numbers two, six, and seven. Therefore, these assignments of error will not be considered. State v. Morris, 444 So.2d 1389 (La.App. 3rd Cir.1984).

OTHER CRIMES EVIDENCE
At trial, Saul Wilson testified that on December 6, 1988, he purchased two rocks of cocaine for $50.00 from defendant. While seated in Wilson's car, defendant brought out a brown wallet or pouch containing six or seven rocks of suspected cocaine. Defendant immediately objected to this testimony as reference to other crimes which he had allegedly committed but for which he was not charged; that is, possession of cocaine with intent to distribute. The trial court overruled defendant's objection ruling that the testimony concerned res gestae and was admissible.
Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged *523 offense that the prosecution could not accurately present its case without reference to them. State v. Rexrode, 536 So.2d 671 (La.App. 3rd Cir.1988), and La.C.E. art. 404(B)(1).
There was no error in the trial court's ruling. The witness saw defendant pull the two rocks of cocaine he purchased out of a pouch containing six or seven rocks of cocaine. This is res gestae and admissible. La.C.E. art. 404(B)(1).

INSTANTER SUBPOENA
Next, defendant contends that the trial court should have granted a recess of the trial while a witness attempted to answer an instanter subpoena duces tecum.
While cross-examining Deputy Saul Wilson, defendant questioned him about a white van defendant got into at the time defendant sold Wilson a bag of marijuana. Deputy Wilson could not recall much about the van except that it was white in color and a 1971 or 1972 model. The witness did say that he made notes and that his notes might contain more information. The court granted defendant's request for an instanter subpoena for the notes of Deputy Wilson. At the end of re-crossexamination of Deputy Wilson, defendant requested a recess of the trial until Deputy Wilson's notes were obtained. The trial judge refused to delay the trial while a search was conducted for these notes.
Defendant did not object to the denial of his request for a recess. Therefore, defendant has waived this objection and cannot argue this error on appeal. La.C.Cr.P. art. 841.

QUALIFICATION OF EXPERT
Defendant objected to Damon Beyeaux being recognized as an expert in the field of identification and analysis of cocaine. The basis for defendant's objection was that Mr. Beyeaux had never been qualified as an expert by a court in cocaine analysis and identification and that Mr. Beyeaux's educational background and experience were inadequate.
Mr. Beyeaux testified that he had a Bachelor of Science degree in Zoology. This degree included 18 hours of chemistry plus some work in college laboratories. Also, Mr. Beyeaux received on the job training at the Southwest Louisiana Crime Lab for a year and a half.
The witness testified that he had been qualified as an expert in the analysis and identification of marijuana by several courts in Louisiana and one court in Arizona. Also, Mr. Beyeaux testified that while at the Southwest Louisiana Crime Lab, he analyzed approximately 750 cocaine samples.
Witnesses testifying about opinions must establish, to the satisfaction of the court, that they are sufficiently knowledgeable about the subject on which they will testify. La.C.E. art. 702. Expert testimony is admitted because the expert is uniquely skilled at drawing inferences and conclusions, thereby helping the jury better understand the subject of his testimony. The competence of an expert is a question of fact within the sound discretion of the trial judge, and his rulings on the qualifications of an expert witness will not be overturned absent manifest error. State v. Davis, 445 So.2d 163 (La.App. 3rd Cir. 1984). The jury retains the right to accept or reject the expert's conclusions. State v. Hodges, 526 So.2d 1275 (La.App. 3rd Cir. 1988), writ denied, 532 So.2d 174 (La.1988).
In the present case, the witness was thoroughly examined by the state, the defendant, and the court as to his qualifications. The fact that this was his first case to testify about analysis of cocaine should not prevent him from being recognized as an expert in the analysis of cocaine since every expert witness will naturally have a first time to be recognized as an expert. See, State v. Hodges, supra. A review of the testimony on direct and cross-examination reveals that the trial judge did not commit error in recognizing Damon Beyeaux as an expert in the analysis and identification of cocaine.

LIMITATION OF CROSS-EXAMINATION
Defendant further complains about the trial judge limiting his cross-examination of *524 Deputy John Jackson. During cross-examination of Deputy Jackson, the trial judge instructed counsel for defendant to ask one question at a time and to allow the witness to complete his answer. Also, the trial judge asked counsel for defendant to refrain from making statements of facts when asking a question.
Defendant never objected to the trial court's rulings. Therefore, this assignment of error has not been properly preserved for appeal. La.C.Cr.P. art. 841.

FINGERPRINT EVIDENCE
Defendant objects to Chief Deputy Robert McCullough's testimony concerning the lack of fingerprints on the contraband.
One of the defenses raised was the absence of defendant's fingerprints on the contraband. During direct examination, Chief Deputy McCullough was asked why no fingerprint analysis was requested for the bag of marijuana. The trial court overruled an objection to this line of questioning stating that the witness was testifying why he did or did not do something based upon his experience and not as an expert in fingerprint analysis.
This court has addressed a question similar to this in State v. James, 447 So.2d 580 (La.App. 3rd Cir.1984). In James, a police officer was questioned concerning the presence or absence of fingerprints on a weapon, and he responded that in his fourteen years of experience, only three cases had been made with fingerprints. This court ruled that the question did not require an opinion by an expert, but was based upon the witness's personal knowledge.
The police officer in James was thereafter asked a series of questions how certain surfaces prevented fingerprints, how wiping prevented fingerprints, and how there is never a guarantee that a fingerprint would be obtained from appropriate surfaces. This court stated in that case at p. 586 that:
"We entertain serious doubt as to whether the foregoing constitutes opinion testimony. It appears to us that the testimony merely contains facts within the knowledge of Captain Richard, gained through his years of experience in police work."
The question in the present case called for an answer based upon Deputy McCullough's experience and personal knowledge. Why the deputy did or did not request fingerprint analysis is not a question requiring knowledge obtained only by special training or experience. Therefore, the trial judge correctly allowed the testimony.

ALIBI EVIDENCE
The defendant attempted to introduce several documents he received from the Army to prove he was at Fort Devens near Boston, Massachusetts during the time he allegedly committed count two, distribution of cocaine, on December 6, 1988. The state never requested notice of alibi defense from the defendant as permitted by La. C.Cr.P. art. 727.
During defendant's case-in-chief, defendant took the stand to testify in his own defense. Defendant testified he was serving at Fort Devens from November 7, 1988, until December 12, 1988. Counsel for defendant attempted to have defendant identify his orders to report to Fort Devens, an NCO (Non-Commissioned Officer) evaluation, and his military pay voucher for the time he was at Fort Devens.
At the time defendant attempted to introduce these documents, his attorney stated they fell under the Business Records exception to the hearsay rule. Counsel for defendant further stated that defendant was entitled to present a defense and these documents were the only way to prove defendant was out of town on the dates at issue, other than by defendant's testimony. Later, counsel said any objection to the evidence should go to the weight as opposed to the admissibility of the evidence. Also, defendant argued, the jury should make the credibility evaluation whether the documents were genuine.
The state objected throughout defendant's arguments based upon lack of foundation and hearsay. The court recessed the trial briefly to review the documents and applicable law. Thereafter, the trial court ruled that the documents constituted hearsay in that they were out-of-court writings *525 being admitted for the truth of the statements contained therein, and made by declarants who were out-of-court, unavailable for cross-examination, and not under oath. The trial court further noted that defendant could not authenticate the records because the documents were not the originals but poor quality duplicates. The trial judge concluded defendant had plenty of time to obtain originals or properly verified evidence of his service.
Defendant attempted to introduce the documents to corroborate his alibi testimony that he was serving in the Army in Massachusetts on December 6, 1988, the day count 2 was allegedly committed. Written evidence of an out-of-court declaration offered to show the truth of matters asserted therein and thus resting for its value upon the credibility of the out-of-court declarant, is hearsay evidence. State v. Henderson, 362 So.2d 1358 (La.1978). Hearsay evidence is inadmissible unless an exception is provided by the Code of Evidence or other legislation. La.C.E. art. 802.
As the Louisiana Supreme Court noted in State v. Martin, 356 So.2d 1370 (La.1978), the issue of authenticity of official records should not be confused with the ultimate issue of admissibility of such records. A rule of authentication is not an exception to the hearsay rule.
Article 804(B)(5) of the Code of Evidence provides a business records exception to the hearsay rule in criminal cases. It provides as follows:
"B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * * * * *
(5) Records of regularly conducted business activity. In a criminal case, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, if the source of information, method, and circumstances of preparation indicate a clear and convincing degree of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Subparagraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Subparagraph."
Under this article, the proffered evidence was properly excluded because no custodian of the records or other qualified witness testified and there was no indication of a clear and convincing degree of trustworthiness of the documents.
The orders, Proffer # 3, do not fit the definition of a business record. They are not a report or record but a command to do something in the future. The orders do not reflect whether defendant complied with the orders and served the full 26-day extension of his tour of duty. Neither the NCO Evaluation, Proffer # 1, nor the military pay voucher, Proffer # 2, was a certified copy or authenticated by a custodian of records or other qualified witness. The NCO Evaluation only covered the months "11/88 to 12/88" and did not contain specific dates when defendant served and his performance was evaluated by his superiors. Therefore, defendant failed to lay the proper foundation to introduce the NCO Evaluation (P-1) and military pay voucher (P-2) with the testimony of a custodian or other qualified witness to establish they were records or reports kept in the regular course of business. Accordingly, there *526 was no error in the trial court's ruling excluding Proffers # 1-# 3.

EXCESSIVE SENTENCE
Defendant alleges that the trial court erred by imposing an excessive sentence.
Article 1, § 20 of the Louisiana Constitution of 1974, prohibits by law the imposition of excessive punishment. A sentence is excessive, in violation of Art. 1, § 20 of the Louisiana Constitution of 1974, if it is grossly disproportionate to the severity of the offense or nothing more than a needless infliction of pain and suffering. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Cassell, 540 So.2d 1219 (La.App. 3rd Cir.), writ denied, 548 So.2d 321 (La.1989); State v. Moral, 541 So.2d 986 (La.App. 3rd Cir.1989). Even a sentence which falls within statutory limits mandated by the applicable statute may be excessive. State v. Sepulvado, 367 So.2d 762 (La.1979).
In order to constitute such a sentence, the penalty imposed must be so grossly disproportionate to the crime committed in light of the harm caused to society as to shock the court's sense of justice. State v. Cann, 471 So.2d 701 (La.1985); State v. Landry, 502 So.2d 281 (La.App. 3rd Cir.), writ denied, 508 So.2d 63 (La.1987); State v. Celestine, 540 So.2d 1208 (La.App. 3rd Cir.1989). However, a trial judge is given wide discretion in imposing sentences within the statutory limits and a sentence should not be set aside as excessive absent a manifest abuse of that discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Square, 433 So.2d 104 (La.1983); State v. Roberts, 541 So.2d 961 (La.App. 2nd Cir. 1989).
For conviction on six counts of distribution of cocaine, La.R.S. 40:967B(1), defendant faced a range of sentence from five to 180 years. For one count of distribution of marijuana, La.R.S. 40:966B(2), the sentence range is five to 30 years. Therefore, defendant faced a minimum five year sentence to a maximum of 210 years. Defendant was sentenced to seven years on one count of distribution of cocaine and five years on each of the remaining five counts of distribution of cocaine and one count of distribution of marijuana to run concurrently with each other but consecutively to the seven year sentence. This gives defendant a total sentence of twelve years.
After reviewing the record and the circumstances of the offenses, we cannot say that the sentences imposed were unconstitutionally cruel, unusual, or excessive.

RECUSAL
At the sentencing hearing, the trial judge related how he had received correspondence from defendant and others concerning defendant's guilt. The sentencing judge was disturbed because the letters all appeared to be written by defendant. The judge turned the letters over to Chief Deputy McCullough, who had a handwriting expert analyze them and concluded that four of the letters were written by the same individual. The letters were allegedly from Gary Neil Prater, Paula Prater, Jenil Smith, the mysterious "the Out-of-Towner," and David Brister. These four letters were received from February through April, 1990.
In May 1990, the judge received a handwritten letter purportedly from attorney Constance Abraham-Handy of Lake Charles. Another handwritten letter purportedly from Mrs. Abraham-Handy was received a few weeks later. When called by the trial judge, Mrs. Abraham-Handy denied writing anything concerning the defendant. She stated that she had visited him while he was in jail, but never represented him. The first letter from Mrs. Abraham-Handy also contained a handwritten note from Robert H. Shemwell, Clerk of Court for the Western District of Louisiana.
The Southwest Louisiana Crime Lab also analyzed these letters and concluded that the same person who wrote the other letters, also wrote these.
Finally, another letter purportedly from Jenil Smith was received in early June 1990. This letter referred to the fact that defendant's sentencing was continued on June 1, 1990. It was not analyzed by the Crime Lab but the trial judge said it looked *527 like the same handwriting as he had seen in the other letters.
The judge noted that David Brister and Constance Abraham-Handy denied writing any letters to him concerning the defendant. Also, the judge noted that each letter he received bore the stamp, "Uncensored, Not Responsible For Contents," which is the stamp put on all mail coming from the jail.
During his account, the judge made several references to threats contained in some of the letters. First, the trial judge stated the Brister letter contained "a certain implication of some kind of improper threat." Next, the trial judge stated in reference to the second letter from Jenil Smith, "I suppose that I could read into that's maybe a veiled threat to me." Finally, the judge stated:
"If I were a scary kind of person, I suppose I could read some threats into what has been said to me. You know, I'm like anybody else. I want to live as long as I can, but I recognized a long time ago that as a judge, it goes with the territory. If there's risks, I've got to take it. You know, I didn't put a gun on anybody to be Judge, and I'm not going to go to bed at night wringing my hands and crying about what's going to happen to me.
I might get bumped off tomorrow or the next day or the day after that. If I do, it's going to be with the knowledge that I've done what I thought was right, and I haven't backed up when I thought I was right.
You need to know that. You said in one of your letters to me, `Believe it.' You believe it, that I do what I have to do as long as I'm within the bounds of the law."
Immediately prior to sentencing, counsel for defendant orally moved for the trial judge to recuse himself from sentencing defendant. This oral motion for recusal was based upon the threats defendant apparently made against the judge making it improper for the court to impose sentence. The trial judge denied the motion stating he had no personal animosity towards defendant and defendant had not demonstrated any prejudice on the judge's part. Further, the trial judge stated that defendant could not "disarm" him because defendant wrote him some letters.
In his brief on appeal, defendant cites two grounds for recusal:
1) appearance of impropriety; and
2) threats formed basis for defendant's sentence.
La.C.Cr.P. art. 671 provides the grounds for recusal of a judge. The two pertinent provisions are sections (1) and (6) which both deal with a judge being unable to conduct a fair and impartial trial because of bias, prejudice, personal interest, or for any other reason. In order to obtain recusal based upon bias, prejudice, or personal interest, the moving party must present facts to establish that the interest is of a substantial nature based upon more than mere conclusory allegations.
In the present case, defendant seeks recusal of the trial judge as a result of defendant's own conduct. The only Louisiana case dealing with a situation similar to this was State v. Garrison, 244 La. 787, 154 So.2d 400 (1963), reversed on other grounds, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In Garrison, prior to his trial on charges of criminal defamation, the defendant had issued a press release critical of all Louisiana judges. Defendant then filed a motion to recuse the presiding judge which was ultimately denied. In a Federal case against the same defendant, U.S. v. Garrison, 340 F.Supp. 952 (E.D.La. 1972), defendant again sought recusal of the trial judge based upon defendant's press release critical of the court's ruling against him in another case. The Federal court in U.S. v. Garrison, denied defendant's motion because to grant the recusal motion would allow any defendant to get rid of a particular judge based upon defendant's conduct in making derogatory statements.
Granting Prater's motion to recuse the trial judge based upon conduct by Mr. Prater would open the doors for any defendant to get rid of a presiding judge by the simple expedient of making a threat *528 against the judge. A defendant does not have the right to select the judge who will preside over his trial or sentencing.
There is no error in the trial court denying defendant's motion to recuse. Defendant failed to make more than conclusory allegations. If defendant suffered any prejudice, it would be reflected in his sentence. However, defendant's sentence is not excessive and, in fact, appears lenient.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.