STATE OF LOUISIANA

VERSUS

RONDELL M. LASALLE

NO. 22-KA-577

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-2274, DIVISION "F"
HONORABLE MICHAEL P. MENTZ, JUDGE PRESIDING

August 18, 2023

**JASON VERDIGETS**
**JUDGE**

Panel composed of Judges Stephen J. Windhorst,
Cornelius E. Regan, Pro Tempore, and Jason Verdigets, Pro Tempore

**AFFIRMED; REMANDED WITH INSTRUCTIONS**

**JMV**
**SJW**
**CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Andrea F. Long

COUNSEL FOR DEFENDANT/APPELLANT,
RONDELL M. LASALLE
    Jane L. Beebe

**VERDIGETS, PRO TEMPORE, J.**

Defendant, Rondell M. Lasalle, seeks review of his convictions for manslaughter and possession of a firearm by a convicted felon as well as his subsequent adjudication and sentence as a third-felony offender. For the following reasons, we affirm defendant's convictions, multiple offender adjudication, and sentences. However, we remand the matter for correction of errors patent.

## PROCEDURAL HISTORY

On September 10, 2020, a Jefferson Parish Grand Jury returned an indictment charging defendant, Rondell M. Lasalle, with second degree murder in violation of La. R.S. 14:30.1 (count one) and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count two). On September 19, 2020, defendant was arraigned and pled not guilty.

On April 4, 2022, a twelve-person jury was selected. On April 6, 2022, the jury unanimously found defendant guilty of the lesser-responsive verdict of manslaughter as to count one and guilty as charged as to count two.

On June 30, 2022, defendant was sentenced to thirty-five years imprisonment at hard labor without the benefit of probation or suspension of sentence as to count one. He was also sentenced to twenty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence as to count two. The sentences were ordered to run concurrently with one another. Also on June 30, 2022, the State filed a multiple offender bill of information wherein it sought to enhance defendant's sentence as to his conviction for manslaughter (count one). Defendant was adjudicated a third-felony offender. After vacating the original sentence on count one, the judge sentenced defendant to thirty-five years imprisonment at hard labor without the benefit of probation or suspension of sentence. The judge ordered the sentences to run concurrently.

Defendant filed a Motion to Reconsider Sentence as to his enhanced sentence on count one and a Notice of Appeal on July 5, 2022. The next day, the Motion to Reconsider Sentence was denied, and the notice of appeal was granted.

In his appellate brief, defendant challenges the admissibility of certain expert testimony and his enhanced sentence on count one.

## FACTS

On March 8, 2020, defendant, Rondell Lasalle, was at the home of Ashley Daigle and Leonard Smith when James Cole, the victim, was shot. Mr. Cole later died at the hospital. The following testimony details that incident.

Ms. Daigle and Mr. Smith testified that on March 8, 2020, they were inside their home at 1112 Orange Blossom Lane. Ms. Daigle, Mr. Smith, and Mr. Cole's two daughters were in the bedroom. Mr. Cole and defendant were in another room.

Mr. Smith and Ms. Daigle were sleeping when they woke up to sounds of defendant and Mr. Cole fighting. Mr. Smith went to the living room to break up the fight, but by the time he got there, they had stopped. Mr. Smith told defendant to leave and returned to the bedroom. Mr. Cole called out to Ms. Daigle to call the police, then Ms. Daigle and Mr. Smith heard two gunshots. Mr. Cole crawled into the bedroom, and defendant walked into the bedroom. Ms. Daigle hit defendant, and he ran out the door. Ms. Daigle observed Mr. Cole was shot in the back. While Ms. Daigle was on the phone with the police, Mr. Smith helped Mr. Cole walk outside to wait for the ambulance.

Officer Tyler Simmons, formerly with the Jefferson Parish Sheriff's Office, was dispatched to 1112 Orange Blossom Lane on March 8, 2020, regarding the shooting. Upon arriving, the officer saw Mr. Cole lying in the front yard with a gunshot wound to his back. Officer Simmons asked Mr. Cole who shot him, and

the officer was told that it was Rondell Lasalle. EMS arrived and took Mr. Cole to the hospital.

Officer Simmons spoke to Mr. Smith and Ms. Daigle. Ms. Daigle stated she had known Mr. Cole and defendant since middle school. Mr. Smith also knew defendant and had known Mr. Cole since Mr. Cole was a child. Ms. Daigle and Mr. Smith described defendant and Mr. Cole as best friends. Mr. Cole and his children were living with Ms. Daigle and Mr. Smith at their house at the time of this incident. Ms. Daigle denied seeing Mr. Cole with a firearm while he lived with her. Mr. Smith denied seeing defendant or Mr. Cole with a firearm that night or any other time. Ms. Daigle and Mr. Smith testified that they were unaware of any "bad blood" between Mr. Cole and defendant at the time of the shooting.

Cadet Vincent Paz, previously with the Gretna Police Department, testified that he observed defendant hastily walking on the sidewalk of the Westbank Expressway going eastbound and looking over his shoulder. Cadet Paz could hear the sirens of the police units headed to Orange Blossom Lane. Defendant turned around and after seeing the police, he started running. Cadet Paz told his sergeant he "had a possible suspect" and informed dispatch that he was going to make a stop. Another officer arrived as Cadet Paz was turning around. Defendant then stopped running and started walking quickly under the Westbank Expressway.

Cadet Paz exited his vehicle around Derbigny and the Westbank Expressway. He and the other officer approached defendant from behind as the other officer told defendant to put his hands on the car. Defendant did not immediately comply. Cadet Paz drew his weapon and instructed defendant to get on his knees. Defendant eventually complied and was handcuffed. Cadet Paz stated that there were injuries to defendant's face when he was stopped.[1]

---

[1] There was a stipulation that if Matthew Craley testified, he would say that on March 8, 2020, he assisted Cadet Paz in apprehending defendant. Mr. Craley would further testify that upon stopping defendant, he stated, "the guy attacked him first."

Defendant was patted down, and a 9 mm Smith and Wesson semiautomatic pistol was located in defendant's backpack.

Detective Donald Zanotelli, previously with the Jefferson Parish Sheriff's Office, responded to a call reporting the shooting that occurred at 1112 Orange Blossom Lane, and he took over the investigation. Detective Zanotelli obtained a search warrant for the residence. He conducted a trace of the firearm found on defendant, and the trace revealed that in 2017, the firearm was reported stolen but that it was later changed to a lost firearm. Detective Zanotelli requested that the firearm be tested for DNA and that defendant be transported to the criminal investigation bureau. Detective Zanotelli relocated to the criminal investigation bureau, and he observed that defendant "had superficial scratches slightly leading to the head and the facial area." Detective Zanotelli requested testing of the clothing defendant was wearing when he was stopped. When Detective Zanotelli learned that Mr. Cole died from the gunshot wound at the hospital, he obtained an arrest warrant for defendant. A search warrant for defendant's DNA was also obtained and executed.

Officer Ryan Singleton, a crime scene technician with the Jefferson Parish Sheriff's Office, was also involved in the March 8, 2020 investigation at 1112 Orange Blossom Lane. He photographed the scene, and he identified an area inside the house that appeared to have blood. A 9 mm fired cartridge casing in the living room was photographed and collected. Officer Singleton described the house as being in a state of disarray. He also inspected the 9 mm Smith and Wesson recovered from defendant's backpack and identified a fired cartridge casing jammed in the slide of the firearm and five 9 mm unfired rounds removed from the magazine of the firearm. Officer Singleton went to the hospital during the investigation and collected the victim's clothing and a fired projectile that was removed from the victim by medical staff.

22-KA-577                                              4

Dr. Ellen Connor, an autopsy pathologist at University Medical Center, was accepted as an expert in forensic pathology. She conducted an autopsy of Mr. Cole, photographs were taken, and she created a report of her findings. Dr. Connor explained that the cause of Mr. Cole's death was a gunshot wound to the torso, and the manner of death was homicide. She also found fresh blunt force injuries to his head and right upper extremities. Mr. Cole had two abrasions on his right cheek that appeared to be fresh. Dr. Connor observed one penetrating gunshot wound to his right midback. Dr. Connor indicated it is possible to determine or attempt to determine a distance or range "of where the victim was and how far it was from" a firearm to receive the wound. Dr. Connor explained that with a contact wound, there should be soot deposited in and around the wound, which would be visible in photographs. She also explained that she did not observe any soot deposit or stippling in the victim's wound, which was also noted in her autopsy report.

Adriana Washington, a DNA analyst with the Jefferson Parish Sheriff's Office, testified that there was DNA support that it was Mr. Cole's blood on defendant's jacket. The firearm contained a mixture of DNA from three contributors. Ms. Washington stated that Mr. Cole could be a very low-level contributor and that there was very strong support that defendant was a contributor.

Emily Terrebonne, previously with the Jefferson Parish Sheriff's Office crime lab, was accepted as an expert in firearm and toolmark analysis pursuant to a stipulation. She analyzed the 9 mm cartridge case and the 9 mm Smith and Wesson, and she determined that the cartridge was fired from that firearm. Ms. Terrebonne also examined a projectile recovered from the victim in the hospital and determined that it was fired from the same 9 mm Smith and Wesson recovered from defendant's backpack.

After the State presented its case, defendant testified. He admitted that he has prior convictions for simple burglary, unauthorized use of a motor vehicle,

possession of a firearm by a convicted felon, and a misdemeanor conviction for resisting arrest. He identified Ms. Daigle as a friend of his since middle school and stated he was also friends with Mr. Smith. Defendant described Mr. Cole as a close friend of his for twelve years. On March 8, 2020, defendant said that he went to Mr. Cole because Mr. Cole, whom defendant described as going through a tough time, called him to hang out. Defendant went over with a backpack, his game system, and some games.

While in a bedroom, defendant and Mr. Cole played video games and joked around. When defendant asked Mr. Cole about him having his children, Mr. Cole gave him a look of agitation and disapproval. Defendant thought that Mr. Cole was agitated every time he had his children, which defendant explained was every time he saw Mr. Cole. Defendant said that he made of fun of Mr. Cole about the mother of his children and "letting her run over him." Defendant continued to make fun of Mr. Cole and laughed the situation off. Defendant described Mr. Cole as becoming really aggressive, so defendant packed up his gaming system. Mr. Cole accused defendant of sleeping with the mother of his children, and defendant denied it. Defendant continued to make fun of Mr. Cole, and he punched defendant. The two fought until Mr. Smith tried to break them up. Defendant continued gathering his things to leave. He turned around and made a comment to Mr. Cole about him trying to fight him over a woman Mr. Cole was "not dealing with." Defendant turned to leave and noticed Mr. Cole go into the bedroom closet. Defendant saw Mr. Cole running behind him with a firearm in his hand. Defendant stated he was in fear for his life and that Mr. Cole had a look of rage in his eyes. Defendant explained that he turned, dropped his backpack, and tried to wrestle the firearm away from Mr. Cole. He gained control of Mr. Cole's right hand, which was holding the firearm. After defendant gained control of the

firearm, he grabbed Mr. Cole's arm. Defendant testified that as he twisted Mr. Cole's arm behind his back, the firearm "went off."

Defendant fled with the firearm as Mr. Cole lay on the ground. He did not check on Mr. Cole or call 9-1-1. Defendant admitted that this was the wrong thing to do. He denied intending to pull the trigger or attempting to kill Mr. Cole. Defendant denied owning or bringing the firearm there and stated that Mr. Cole had never pulled a firearm on him before.

On rebuttal, the State called Dr. Connor and Ms. Terrebonne to testify. Dr. Connor testified that she sat through defendant's testimony and saw the way he positioned his arm behind his back with the firearm. She also stated that Mr. Cole's wound would not have been created the way defendant demonstrated. Dr. Connor was asked if the firearm was fired at the angle defendant testified to, would it have created the wound to Mr. Cole's back. She testified that it would not. Dr. Connor explained that based on defendant's testimony, she would expect to see soot in and at the wound site and that it would be considered a contact wound. Dr. Connor again testified that there was no soot in or at the wound site. Dr. Connor explained that if it is a contact wound, there would be soot but not stippling; if the firearm is removed a little, there would be soot and stippling; and that stippling would be expected up to two or three feet away.

Ms. Terrebonne testified that a firearm requires someone to pull the trigger to fire it, and it does not fire on its own. She also testified that the bullet hole in Mr. Cole's shirt was inconsistent with defendant's testimony as to how the shooting occurred.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant argues that the judge erred in permitting Ms. Terrebonne, who was qualified as an expert in firearm and toolmark analysis, to offer expert opinion testimony concerning crime scene

reconstruction based on the victim's clothing condition without holding the witness to the standards of *Daubert*.[2] He avers that this error allowed the jury to convict him based upon the unfounded opinion of a witness qualified as an expert in another subject. Defendant argues that there was no *Daubert* hearing and that Dr. Connor and Ms. Terrebonne were permitted "to expound under the guise of rebuttal testimony as to the likelihood of the events happening" to which defendant testified. He claims this was not proper rebuttal testimony and that Ms. Terrebonne testified outside her expertise. Defendant avers that her testimony did not appear to be based on any testing, there was no report related to the testimony at issue, and her reliability as to her expert testimony was unclear. He concludes that this error mandates reversal.

The State asserts that Ms. Terrebonne's opinion testimony was within the scope of her expertise. The State further argues that the rebuttal testimony was admissible under La. C.E. art. 611(E),[3] and the trial court did not abuse its discretion in allowing the limited rebuttal testimony of Dr. Connor and Ms. Terrebonne. The State also asserts that admissibility of expert witnesses' testimony under *Daubert* was not preserved on appeal.

The trial judge is vested with broad discretion in determining the scope of expert testimony. *State v. Achelles*, 16-170 (La. App. 5 Cir. 12/21/16), 208 So.3d 1068, 1077. Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge whose rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. *State v. Thomas*, 15-759 (La. App. 5 Cir. 5/12/16), 192 So.3d 291, 307, *writ denied*, 16-1085 (La. 5/19/17), 219 So.3d 335.

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

[3] La. C.E. art. 611(E) in pertinent part states, "[T]he state in a criminal prosecution shall have the right to rebut evidence adduced by their opponents."

In *Cheairs v. State ex rel. Department of Transp. and Development*, 03-680 (La. 12/3/03), 861 So.2d 536, the supreme court recognized a distinction between challenging the reliability of the methodology used by the expert, which is addressed by a *Daubert* inquiry, and the expert's qualifications to testify competently regarding the matters he intends to address. *State v. Mosley*, 08-1318 (La. App. 5 Cir. 5/12/09), 13 So.3d 705, 713, *writ denied*, 09-1316 (La. 3/5/10), 28 So.3d 1002. The purpose of a *Daubert* hearing is to determine the reliability of the methodology used by an expert; its purpose is not to determine an expert's qualifications to give an opinion. *Ladart v. Harahan Living Ctr., Inc.*, 13-923 (La. App. 5 Cir. 5/14/14), 142 So.3d 103, 107 n.3, *writ denied*, 14-1147 (La. 9/19/14), 149 So.3d 243.

Defendant's *Daubert* arguments are misplaced. Defendant is challenging the expert's qualifications to testify, not the reliability of her methodology. As a result, this argument has no merit. Moreover, defense counsel did not request a *Daubert* hearing for Ms. Terrebonne in the trial court. The failure to raise an objection to the admissibility and reliability of an expert's testimony constitutes a waiver of such an objection. *State v. Boudoin*, 11-967 (La. App. 5 Cir. 12/27/12), 106 So.3d 1213, 1225, *writ denied*, 13-255 (La. 8/30/13), 120 So.3d 260. A contemporaneous objection must be made to the disputed evidence or testimony in the trial court record to preserve the issue for appellate review. *Id*. at 1225-26. Therefore, defendant's objections to the admissibility of Ms. Terrebonne's testimony under *Daubert* are not preserved for appeal. *State v. Borden*, 07-396 (La. App. 5 Cir. 5/27/08), 986 So.2d 158, 172, *writ denied*, 08-1528 (La. 3/4/09), 3 So.3d 470.

Nevertheless, we have reviewed Ms. Terrebonne's rebuttal testimony. Ms. Terrebonne stated she listened to defendant's testimony and observed his explanation. She testified that a firearm does not fire by itself but requires

someone to pull the trigger. She stated she had viewed the white T-shirt worn by Mr. Cole. The prosecutor asked Ms. Terrebonne if, in connection with her employment with the Jefferson Parish Sheriff's Office crime lab in the firearm division, she had the opportunity to examine clothes that would have been struck by ballistics evidence. She replied that in her training, she had seen numerous articles struck at different distances and worked with other examiners qualified to construct distance examinations. However, she "never had the opportunity to offer them." The prosecutor then asked, "Are there things that you were able personally to see and examine with your naked eye, with your experience and training as it pertained to ballistics and firearms?" Ms. Terrebonne agreed that her experience and training as an expert in firearms and toolmark examination included viewing clothing that had come into contact with ballistic evidence. She stated she was trained in that and in what to look at. Ms. Terrebonne acknowledged that there are things an expert in ballistics can observe with the naked eye. Ms. Terrebonne testified that the hole in Mr. Cole's shirt was inconsistent with defendant's testimony. She explained that with a close gunshot, the hole would be more irregular because there is more damage from the pressure and heat of the firearm as well as damage from the gunshot residue that comes out of the firearm. She added that oftentimes there would be soot on the shirt, but Mr. Cole's shirt did not contain soot.

Proper rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts which are given in evidence by the adverse party. *State v. Vedol*, 12-376 (La. App. 5 Cir. 3/13/13), 113 So.3d 1119, 1129, *writ denied*, 13-811 (La. 11/1/13), 125 So.3d 419. The State is allowed to present rebuttal evidence because it is required to present its case first and is unable to anticipate the exact nature of the defense. The State may use rebuttal evidence to strengthen its case in chief. *State v. Silva*, 96-459 (La. App. 5 Cir. 11/26/96), 685 So.2d 1119, 1122, *writ*

*denied*, 96-3067 (La. 6/13/97), 695 So.2d 964. Rebuttal evidence is not subject to pretrial discovery. *State v. McGinnis*, 04-1286 (La. App. 5 Cir. 10/6/05), 917 So.2d 471, 486, *writ denied*, 05-2469 (La. 4/28/06), 927 So.2d 283. The trial court is vested with sound discretion in determining what constitutes valid and admissible rebuttal evidence. A trial court's ruling on the admissibility of rebuttal evidence will not be disturbed, except in extreme cases, such as when the evidence was kept back deliberately for the purpose of deceiving and obtaining an undue advantage. *Vedol*, *supra*.

Here, we find that the rebuttal testimony of Ms. Terrebonne was offered to counteract or disprove the evidence presented by defendant in his testimony and by his demonstrations. Ms. Terrebonne's testimony refuted that a firearm does not fire on its own as defendant asserted. Ms. Terrebonne further testified that the condition of Mr. Cole's shirt was inconsistent with defendant's testimony. Mr. Cole's shirt did not contain soot. Mr. Terrebonne explained that if the gunshot was close, the shirt's hole would be more irregular and there would probably be soot on Mr. Cole's shirt. While Ms. Terrebonne had previously qualified as an expert in firearms and toolmark analysis, she had not previously testified regarding distance examinations based on articles of clothing. However, we do not find that her testimony on particular matters within that expertise should be disqualified simply because she has not testified specifically about them before.[4] Because her testimony directly related to the effects of a firearm, we find that it is within Ms. Terrebonne's expertise.

---

[4] The fact that this is the first case for someone to testify about a matter should not prevent him from being qualified as an expert witness since naturally every expert witness will have a first time to be recognized as an expert. *See State v. Watts*, 14-429 (La. App. 1 Cir. 11/21/14), 168 So.3d 441, 451, *writ denied*, 15-146 (La. 11/20/15), 180 So.3d 315; *State v. Prater*, 583 So.2d 520, 523 (La. App. 3 Cir. 1991), *writ denied sub nom. State ex rel. Prater v. Third Circuit, Court of Appeal*, 93-1715 (La. 6/17/94), 638 So.2d 1087.

Based on our review of the record, there is nothing to suggest that the trial court committed error in allowing the rebuttal testimony of Ms. Terrebonne. For the above reasons, we conclude that this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant asserts that his thirty-five-year enhanced sentence for manslaughter is excessive. He explains that prior to trial, the State offered him twenty-five years imprisonment if he pled guilty to manslaughter. He argues that the judge punished him for going to trial by sentencing him to ten years beyond the plea offer. Defendant contends that the judge did not justify why a twenty-five-year term was not imposed. He opines that the sentence is excessive and not justified.

The State asserts that the trial court did not abuse its broad discretion relative to the sentence imposed. It argues that the sentence was well below the maximum sentence authorized by the statute, and the sentence is commensurate with sentences in other cases where defendant was originally charged with second degree murder and was either convicted or pled guilty to manslaughter.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. *State v. Nguyen*, 06-969 (La. App. 5 Cir. 4/24/07), 958 So.2d 61, 64, *writ denied*, 07-1161 (La. 12/7/07), 969 So.2d 628. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense, or imposes needless and purposeless pain and suffering. *Id.*

According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Woods*, 20-73 (La. App. 5 Cir. 9/9/20), 303 So.3d 403, 406, *writ denied*, 21-27 (La. 2/17/21), 310 So.3d 1150. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to

society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *State v. Hankton*, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, *writ denied*, 21-1128 (La. 12/7/21), 328 So.3d 425. "On appellate review of sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Aguliar-Benitez*, 21-174 (La. 10/10/21), 332 So.3d 618, 620.

In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Hankton*, *supra*. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Tracy*, 02-227 (La. App. 5 Cir. 10/29/02), 831 So.2d 503, 516, *writ denied*, 02-2900 (La. 4/4/03), 840 So.2d 1213.

The record reflects that, prior to the imposition of sentence, defense counsel informed the judge that defendant acknowledged the seriousness of the death of his friend and that a firearm was involved. She stated defendant maintained it was self-defense and that defendant had scratches on his face when he was apprehended. In citing mitigating factors, counsel said defendant acted under strong provocation by Mr. Cole, there were substantial grounds to excuse or justify the criminal behavior, the victim facilitated the commission, and the criminal conduct was the result of circumstances unlikely to recur.

As to defendant's manslaughter conviction, the judge imposed a sentence of thirty-five years imprisonment at hard labor without the benefit of probation or suspension of sentence, to which defense counsel objected. The same day, after adjudicating defendant a third-felony offender, the judge vacated his original sentence and sentenced defendant to thirty-five years imprisonment at hard labor

without the benefit of probation or suspension of sentence, which is the same length as his original sentence. The judge noted the sentence was in accordance with La. C.Cr.P. art. 894.1, and did not provide any further reasons for the sentence. The judge recommended self-help programs and ordered the sentences on counts one and two to run concurrently. Defense counsel objected to the enhanced sentence without reasons. Defendant then filed a Motion to Reconsider Sentence as to his enhanced sentence for manslaughter, which the trial court later denied.

On appeal, defendant argues that he did not receive the sentence he was offered pursuant to a plea offer and that the sentence was punitive in light that he was offered a twenty-five-year sentence if he pled guilty to manslaughter. This Court, however, has recognized that when a defendant chooses not to accept the plea bargains offered by the State, he takes the risk of a greater penalty upon a jury conviction. *State v. Johnson*, 11-375 (La. App. 5 Cir. 12/28/11), 83 So.3d 1116, 1123, *writ denied*, 12-296 (La. 6/22/12), 91 So.3d 966. Particularly, the risk of penalty becomes greater upon jury conviction because the court has the benefit of witness testimony, allowing it to more fully consider the severity of the offense. *Id.* Therefore, defendant's argument that his sentence was punitive lacks merit.

Additionally, defendant argues that the judge did not articulate sufficient reasoning for not imposing a sentence in conformity with the plea offer, and his sentence is excessive. La. C.Cr.P. art. 894.1(C) states, "The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." However, where the record clearly shows an adequate factual basis for the sentence imposed, remand for resentencing is unnecessary even where there has not been full compliance with Article 894.1. *State v. Garrison*, 15-285 (La. App. 5 Cir. 12/23/15), 184 So.3d 164, 171, *writ denied*, 16-258 (La. 2/10/17), 215 So.3d 700. In addition, a remand for more complete compliance with La.

C.Cr.P. art. 894.1 is not required when the sentence imposed is not "apparently severe." *State v. Acevedo*, 22-124 (La. App. 5 Cir. 12/28/22), 356 So.3d 1137, 1146 (quoting *State v. Chess,* 00-163 (La. App. 5 Cir. 6/27/00), 762 So.2d 1279, 1283).

In the present case, the record reflects that the trial court did not articulate any reasons for imposing the thirty-five-year sentence or reference the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. However, under the particular facts of this case, we find that a remand to the trial court for resentencing is not warranted because the record supports the sentence imposed. *See Acevedo*, *supra.*

When considering the nature of the crime and background of defendant, he was tried for second degree murder and convicted of manslaughter, which is a crime of violence under La. R.S. 14:2(B). The record reflects that at trial, expert testimony contradicted defendant's version of events. However, it is undisputed that the victim died from a gunshot wound to his back. Defendant also testified that he left the victim, who was his best friend, without checking on him or calling 9-1-1 and that he fled the scene with the firearm. The victim's children and two other adults were in the house at the time of the shooting. As such, other people could have been injured in the incident, and the victim's children may have seen their father after he was shot. Defendant has prior convictions and appears to have had other charges pending at the time his enhanced sentence was imposed.[5]

Pursuant to La. R.S. 14:31(B), whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years. The judge originally sentenced defendant to thirty-five years imprisonment at hard labor but vacated the sentence after the multiple bill hearing. The judge adjudicated defendant a third-felony offender. La. R.S. 15:529.1(A)(3) provides that if the third felony is such

---

[5] Defendant testified that he has prior convictions for simple burglary, unauthorized use of a motor vehicle, possession of a firearm by a convicted felon, and a misdemeanor conviction for resisting arrest.

that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for a determinate term not less than one-half of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction. Therefore, defendant faced a sentence range of twenty to eighty years imprisonment at hard labor. The judge imposed an enhanced sentence of thirty-five years imprisonment at hard labor, which is around a mid-range sentence. This Court has upheld the same sentence wherein the defendant was charged with second degree murder and ultimately convicted of manslaughter,[6] and other courts have upheld similar sentences.[7]

In considering the three factors for reviewing a trial court's sentencing discretion—the nature of the crimes, the nature and background of defendant, and the sentences imposed for similar crimes by other courts—we find that defendant's thirty-five-year sentence for manslaughter as a third-felony offender is not excessive and not an abuse of discretion. The record supports the sentence imposed. Accordingly, this assignment of error lacks merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, *State v. Oliveaux*, 312 So.2d 337 (La. 1975), and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). The following errors require corrective action.

---

[6] *See State v. Leach*, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531; *State v. Pham*, 12-635 (La. App. 5 Cir. 5/16/13), 119 So.3d 202, 224, *writ denied*, 13-1398 (La. 12/6/13), 129 So.3d 531; *State v. Weatherspoon*, 06-539 (La. App. 5 Cir. 12/12/06), 948 So.2d 215, *writ denied*, 07-462 (La. 10/12/07), 965 So.2d 398.

[7] *See State v. Trosclair*, 22-798 (La. App. 1 Cir. 3/13/23), 2023 WL 2468528 (the defendant was charged with second degree murder and convicted of manslaughter. The first circuit upheld a thirty-five-year sentence.); *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So.3d 749, 754 (wherein the second circuit upheld a thirty-five-year sentence for manslaughter); *State v. Cuccia*, 05-807 (La. App. 4 Cir. 3/15/06), 933 So.2d 134, *writ denied*, 06-903 (La. 10/27/06), 939 So.2d 1273 (wherein the defendant was adjudicated a third-felony offender, and the fourth circuit upheld a thirty-year enhanced sentence for a manslaughter conviction).

There are errors in the original and habitual offender uniform commitment orders (UCO). Both UCOs state that in count one, defendant was charged with manslaughter. However, defendant was charged with second degree murder and was convicted of manslaughter. Therefore, the UCOs need to be corrected to reflect that defendant was charged with second degree murder and convicted of manslaughter. *See State v. Leach*, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531.

Additionally, there is a discrepancy between the sentencing transcript, the minute entry, and the original UCO as to count two. La. R.S. 14:95.1(B) provides that the sentence is to be served without the benefit of probation, parole, or suspension of sentence. The transcript reflects that the trial court imposed defendant's sentence on count two without the benefit of probation, parole, or suspension of sentence in accordance with the statute. However, the minute entry and original UCO do not reflect that the trial court restricted benefits on count two. The transcript prevails where there is an inconsistency between the minute entry and the transcript. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983). As such, defendant's original UCO and minute entry need to be corrected to reflect the restriction of benefits as to count two. *See State v. Blunt*, 20-171 (La. App. 5 Cir. 11/18/20), 307 So.3d 384, 395.

We remand this matter for correction of the minute entry and UCOs as directed above. We direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCOs to the institution to which defendant has been sentenced and to the Department of Corrections' legal department.

## DECREE

For the foregoing reasons, we affirm defendant's convictions, his adjudication as a third-felony offender, and his sentences.  The matter is remanded to the trial court with instructions to correct the sentencing minute entry and the UCOs, as noted above.

**AFFIRMED; REMANDED**
**WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 18, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-577

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MICHAEL P. MENTZ (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          JANE L. BEEBE (APPELLANT)

**MAILED**
RONDELL M. LASALLE #630673          HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)                        (APPELLEE)
RAYBURN CORRECTIONAL CENTER         DISTRICT ATTORNEY
27268 HIGHWAY 21                    TWENTY-FOURTH JUDICIAL DISTRICT
ANGIE, LA 70426                     200 DERBIGNY STREET
                                    GRETNA, LA 70053